Sean Reis (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE, LLP
7700 Irvine Center Drive, Suite 800
Irvine, California 92618
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

Jay Edelson (*Pro Hac Vice* to be sought)
Jedelson@edelson.com
Steven L. Lezell (Admitted *Pro Hac Vice*)
slezell@edelson.com
Rafey S. Balabanian (*Pro Hac Vice* to be sought)
rbalabanian@edelson.com
Michael Aschenbrener (Admitted *Pro Hac Vice*)
maschenbrener@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Counsel for Plaintiffs*
[additional counsel appear on signature page]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH ROLING and ALEXANDER LANDVATER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>E*TRADE SECURITIES LLC, a Delaware limited liability company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 3:10-cv-00488-MHP<br><br>[Honorable Marilyn Hall Patel]<br><br>**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Joseph Roling ("Roling") and Alexander Landvater ("Landvater") (together "Plaintiffs"), for their complaint, allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by their attorneys, except as to those allegations pertaining to Plaintiffs and their counsel personally, which are alleged upon personal knowledge:

## Introduction

1. This case is about Defendant E*Trade Securities LLC's ("E*Trade") unlawful practice of charging and collecting "E*Trade" account inactivity fees from their customers, including from Plaintiffs. E*Trade's contracts with its customers expressly state that "E*TRADE Securities will not charge fees when a customer account is inactive for a period of time." Despite this express provision prohibiting E*Trade from charging customers fees for account inactivity, E*Trade nonetheless charges its customers a $40 "inactivity fee" for each quarter in which the customer does not make a trade. As a result, E*Trade has wrongfully collected and retained millions of dollars worth of inactivity fees from Plaintiffs and the Class.

2. Each member of the Class was charged a $40 inactivity fee for each quarter in which they did not make at least one trade. E*Trade charged Plaintiffs Roling and Landvater inactivity fees and, therefore, Plaintiffs bring this class action on behalf of themselves and the putative class for: damages for breach of contract, alternative damages for unjust enrichment/restitution, alternative damages for the imposition of unreasonable penalties and prohibited damages in violation of Cal. Civ. Code § 1671, and for equitable and injunctive remedies for illegal, unfair, fraudulent practices under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et. seq*.).

## Nature of the Claim

3. E*Trade systematically and routinely charged Plaintiffs and the other members of the Class $40 quarterly inactivity fees without having the legal authority to do so. E*Trade's Securities "Brokerage Customer Agreement" – a consumer adhesion contract drafted by E*Trade and imposed on account holders by E*Trade – provides:

> **(b) Fees, Commissions and Account Minimums**
> I agree to pay brokerage commissions, charges and other fees promptly as set forth in E*TRADE Securities' then-current fee schedule and as applicable to my Account and the transactions and services I may receive. I also agree to pay all applicable federal, state and local taxes. I authorize E*TRADE Securities automatically to debit my Account for any such brokerage commissions, charges, fees and taxes. **A schedule of the current fees and commissions is available on the E*TRADE Securities Web site. E*TRADE Securities may modify the fee structure at any time by posting a modified schedule on its Web site**.

2

(*See* "Brokerage Customer Agreement," Section 4(b), a true and accurate copy of which is attached as Exhibit A.) (Emphasis added.) Despite the fact that the Brokerage Customer Agreement is made available on E*Trade Securities Website, there is no hyperlink to E*Trade's schedule of current fees and commissions, notice, or other instructions that would assist customers in finding the posted and available fee schedule. Rather, customers much search the website to locate the contract's purported terms.

4. At all relevant times, E*Trade posted and made available via the E*Trade Securities Web Site a schedule called "View Commissions & Fees." Under the heading "No Inactivity Fees," the schedule provides that:

> "E*TRADE Securities will not charge fees when your account is inactive for a period of time." (*See* "View Commissions & Fees,"[1] at 3, a true and accurate copy of which is attached as Exhibit B).

5. Despite this express provision prohibiting E*Trade from charging inactivity fees, E*Trade systematically and routinely charged Plaintiffs and its other customers $40 "inactivity fees" for each fiscal quarter during which the customers did not make at least one trade on their accounts.

6. E*Trade then collected the inactivity fees it claimed due by liquidating its customers' accounts. For example, if E*Trade determined a particular customer owed $160 worth of inactivity fees for not having made a trade during the fiscal year, E*Trade would sell the customer's stock once the value of the stocks comprising the customer's account declined to $160. E*Trade would then pay itself the proceeds of the sale to cover the fees it claimed due.

7. On information and belief, E*Trade has wrongfully collected and retained millions of dollars in account inactivity fees from Plaintiffs and its other customers.

8. Because the amounts E*Trade charges and collects is relatively small on an individual basis – ranging from $40 to a few hundred dollars per account – and because of E*Trade's vast resources and superior bargaining power, E*Trade employs this scheme to obtain small amounts of money from a large number of people with the hope and expectation that its

---

[1] Available at URL https://us.etrade.com/e/t/estation/pricing?id=1209080000#AAF (last visited January 21, 2010.

3

illegal conduct will go unnoticed and, ultimately, unpunished.

**Parties**

9. **Plaintiff Joseph Roling:** Plaintiff Roling maintains his primary residence in the City of Chicago and is a citizen of the State of Illinois. In 1999, Mr. Roling opened an E*Trade securities brokerage account, and deposited $1000 in that account for the purchase of various stocks and other securities.

10. **Plaintiff Alexander Landvater:** Plaintiff Landvater maintains his primary residence in the City of San Francisco and is a citizen of the State of California. In or around 2006, Mr. Landvater opened an E*Trade securities brokerage account, and deposited $1000 in that account for the purchase of various stocks and other securities.

11. **Defendant E*Trade Securities LLC:** E*Trade is a Delaware limited liability company with its headquarters and principle place of business located at 135 East 57th Street, 14th Floor, New York, New York 10022. E*Trade is a broker-dealer of stocks and securities. E*Trade Securities LLC does business throughout the state of California and the nation.

12. Does 1-50 are other E*Trade entities, subsidiaries, affiliates, predecessors, or successors involved in the creation, marketing, sale, control, and other aspects of securities brokerage at issue in this Amended Complaint, or who exercised control over E*Trade or are otherwise liable or vicariously liable for the acts and omissions of E*Trade as set forth in this Amended Complaint. Plaintiffs have been unable, despite reasonable efforts, to identify these Doe defendants and anticipate that the identity of the Doe defendants will be uncovered through discovery. Once discovery reveals the identities and liabilities of the Doe defendants, Plaintiffs will seek leave to amend this Amended Complaint to name them and will serve them according to the Federal Rules of Civil Procedure. (Collectively, E*Trade and the Doe defendants are referred to as "Defendants," and the allegations against "E*Trade" are deemed to apply to all Defendants.)

**Jurisdiction and Venue**

13. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2). This Complaint alleges claims on behalf of a national class of E*Trade brokerage

1 | account holders who are minimally diverse from the Defendant. There are well over 100 class
2 | members and, on information and belief, the aggregate of their claims for wrongfully charged
3 | inactivity fees exceed the sum or value of $5,000,000. This Court has supplemental jurisdiction
4 | over the pendent state law claims under 28 U.S.C. § 1367.

5 |     14.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of
6 | the events, circumstances, and omissions relating to the decision to charge, as well as the actual
7 | charging of Plaintiffs and the Class members of $40 inactivity fees each quarter, which gives rise
8 | to these claims, occurred in and emanate from this District.

9 |     15.    This Court has personal jurisdiction over E*Trade under Cal. Code Civ. Proc.
10 | § 410.10 because some of the critical acts alleged herein were committed in and emanate from
11 | California (specifically in the Northern District of California), and because the Defendant is
12 | registered to do business in this state, and actively conducts business in this District.

### Facts Specific to Plaintiff Joseph Roling

16. In or around 1999, Mr. Roling opened an E*Trade securities brokerage account. Mr. Roling deposited $1,000 into the account, which E*Trade used to purchase $1,000 worth of stocks and other securities that he selected on his behalf.

17. At all relevant times hereto, the account agreement expressly provided that E*Trade did not charge fees for a customer's failure to make trades for any period of time.

18. In or around 2007, Plaintiff learned via his E*Trade online account that E*Trade was charging his account $40 "quarterly inactivity fees." Plaintiff determined that each quarter during which he did not make at least one trade, E*Trade would charge his account $40, representing that quarter's inactivity fee.

19. When Plaintiff noticed that the inactivity fees were accumulating, he contacted E*Trade customer service and disputed the imposition of such charges. Plaintiff stated that at no time was he informed of any change in his contract allowing E*Trade to impose such charges. E*Trade's representatives responded that E*Trade was entitled to charge and collect such fees and told Plaintiff there was nothing he could do to avoid the charges.

20. The stocks Plaintiff selected decreased in value over time.

21. In or around 2008, the value of the stocks in Plaintiff's account decreased so that the balance in his account equaled that of the amount of inactivity fees E*Trade had noted was due and owing. In response to this dip in value, E*Trade liquidated Plaintiff's account by selling his stocks. E*Trade used the proceeds of this sale to pay itself for the inactivity fees. Following this liquidation, E*Trade closed Plaintiff's account.

22. When Plaintiff learned of E*Trade's liquidation of his account he contacted customer service. Plaintiff requested E*Trade refund the money and reinstate his account. E*Trade again insisted that E*Trade had the authority to charge quarterly inactivity fees and to liquidate and close his account if the account balance fell to the amount purportedly owed for such fees.

23. E*Trade refused to refund Plaintiff's money or reinstate his account.

24. At all times relevant hereto, E*Trade posted and made available on its website a fee schedule expressly stating E*Trade was not permitted to charge inactivity fees.

**Facts Specific to Plaintiff Alexander Landvater**

25. In or around 2006, Mr. Landvater opened an E*Trade securities brokerage account. Mr. Landvater deposited approximately $1,000 into the account, which E*Trade used to purchase $1,000 worth of stocks and other securities that he selected on his behalf.

26. At all relevant times hereto, the account agreement expressly provided that E*Trade did not charge fees for a customer's failure to make trades for any period of time.

27. In or around 2008, Plaintiff learned via his E*Trade online account that E*Trade was charging his account $40 "quarterly inactivity fees." Plaintiff determined that each quarter during which he did not make at least one trade, E*Trade would charge his account $40, representing that quarter's inactivity fee.

28. When Plaintiff noticed the inactivity fees he contacted E*Trade customer service and disputed the imposition of such charges. Plaintiff stated that at no time was he informed of any change in his contract allowing E*Trade to impose such charges or allowing E*Trade to sell

his stock. E*Trade's representatives responded that E*Trade was entitled to charge and collect such fees, that Plaintiff shouldered the burden of monitoring E*Trade's website for changes to his account agreement, and that there was nothing Plaintiff could do to avoid the charges.

29. The stocks Plaintiff selected decreased in value over time.

30. In or around 2008, Plaintiff learned that despite his protest, E*Trade had liquidated Plaintiff's account by selling his stocks so that no money remained in the account. E*Trade used the proceeds of these sales to pay itself for the inactivity fees.

31. E*Trade refused to refund Plaintiff's money or reinstate his account.

32. At all times relevant hereto, E*Trade posted and made available on its website a fee schedule expressly stating E*Trade was not permitted to charge inactivity fees.

## Class Certification Allegations

33. Plaintiffs seek certification of a class under both Rule 23(b)(2) and Rule 23(b)(3).

34. **Definition of the Class:** Pursuant to Federal Rule of Civil Procedure 23, Roling and Landvater bring this Amended Complaint against the Defendant on behalf of a Class consisting of:

> All persons in the United States who had an E*Trade Securities brokerage account that E*Trade charged at least one $40 quarterly inactivity fee for any fiscal quarter during which the customer did not make at least one trade. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

Plaintiffs anticipate that amending the Class definition may become necessary following discovery.

35. **Numerosity:** The exact number of the members of the Class is unknown and is not available to Roling and Landvater, but individual joinder in this case is impracticable. Defendant has millions of customers with brokerage accounts, potentially thousands of whom—if not more—were charged quarterly inactivity fees. Class members can be easily identified through Defendant's records and public records.

7

36. **Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a) Whether E*Trade was entitled to charge and collect $40 quarterly inactivity fees under its brokerage agreements;

(b) Whether E*Trade's brokerage accounts are unconscionable adhesion contracts;

(c) Whether E*Trade's fee schedule provided for the imposition of $40 quarterly inactivity fees;

(d) Whether E*Trade's charging of $40 quarterly inactivity fees constituted unlawful liquidated damages under California law;

(e) Whether E*Trade should be allowed to retain the inactivity fees from Plaintiffs and the Class under principles of equity and good conscience;

(f) Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

37. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class, as Plaintiffs and other Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions made uniformly with respect to Plaintiffs and the public. The California laws under which Plaintiffs' claims arise do not conflict with the laws of any other state in any material way.

38. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class members, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class and Defendant has no defenses unique to Plaintiffs.

39. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the

actions of Defendant. It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Amended Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

40. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of the Defendant challenged herein apply to and affect all members of the Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiffs.

### Count I: Breach of Contract
### (On behalf of Plaintiffs and the Class)

41. Plaintiffs incorporate and re-allege paragraphs 1-40 as if set forth fully herein.

42. Plaintiffs and E*Trade entered into a contract that E*Trade drafted and controls via its website. With the exception of certain unconscionable provisions such as the choice of law provision and the arbitration provision, the Brokerage Customer Agreement sets forth the material terms of the Parties' contract. (*See* Ex. A.)

43. The Brokerage Customer Agreement provides that E*Trade may only charge fees in accordance with the fee schedule that E*Trade posts and makes available via its website.

44. At all relevant times, E*Trade caused to be posted and made available via its website a fee schedule, "View Commissions & Fees," that expressly stated under the heading "No Inactivity Fees," that "E*TRADE Securities will not charge fees when your account is inactive for a period of time." (*See* Ex. B.)

45. Despite this express provision in the fee schedule, E*Trade breached its contracts

by causing Plaintiffs and the other Class members to be charged inactivity fees at the end of each fiscal quarter during which the customer did not make a trade. For example, if a customer did not make a trade during the course of the year, the customer's online account would reflect that E*Trade was due to be paid $160 ($40 times 4 fiscal quarters).

46. In Plaintiffs' cases and many others, E*Trade collected these sums by liquidating Plaintiffs' and its customers' accounts when the value of the stocks, mutual funds or other securities in the customers' accounts dipped to the supposed amount due to E*Trade in quarterly inactivity fees. Taking the example above, if the value of the stocks or other securities in the customer's account fell to $160, E*Trade would sell the customer's shares, pay itself the monies purportedly due for the inactivity fees, and close the customer's account.

47. E*Trade sold the stock and/or other securities in Plaintiffs' account when the value of those stocks and/or securities declined such that the balance equaled the amount E*Trade claimed Plaintiffs owed in inactivity fees. E*Trade then closed Plaintiffs' account.

48. Insofar as E*Trade claims it amended, modified, changed, or otherwise altered its contract so as to purportedly allow E*Trade to charge such $40 quarterly fees, E*Trade failed to give proper notice to Plaintiffs or the public of any such charges.

49. As an actual and proximate result of E*Trade's breaches of its contracts as described above, Plaintiffs and the Class members suffered damages equal to the inactivity fees wrongfully charged to them, in addition to lost time they spent fruitlessly trying to get E*Trade to correct E*Trade's errors, interest and other actual and consequential damages.

50. Plaintiffs and the Class members fully performed their obligations under their contracts.

WHEREFORE, Plaintiffs, individually and on behalf of the putative class, respectfully pray for a declaration that E*Trade has breached its contracts with Plaintiffs and the Class, and actual and consequential damages in an amount to be proven at trial, plus costs.

**Count II: Alternative Claim for Unjust Enrichment/Restitution**
**(On behalf of Plaintiffs and the Class)**

51. Plaintiffs incorporate and re-allege paragraphs 1-40 as if set forth fully herein.

52. In the alternative, E*Trade's Brokerage Customer Agreement is procedurally and substantively unconscionable and unenforceable under California law, Cal. Civ. 1670.5(a).

53. The Brokerage Customer Agreement is an adhesion contract drafted by E*Trade and imposed on the customer on a "take-it-or-leave-it basis." There is no negotiation in the formation or performance of the Brokerage Customer Agreement and E*Trade uses the contract to take relatively small sums of money from a large pool of people.

54. In addition to the unconscionable choice of law and arbitration provisions, the provision that allows E*Trade to unilaterally change the types and amounts of fees it may charge to its customers' accounts by posting a separate fee schedule on its website is further unconscionable and unenforceable because customers are required to scour E*Trade's website for the terms of the agreement.

55. In cases where E*Trade changes the Brokerage Customer Agreement or the schedule, E*Trade fails to provide adequate notice of the specific changes to its customers. The online version of the Brokerage Customer Agreement does not contain a hyperlink to the fee schedule or otherwise instruct customers how to obtain the fee schedule. Customers are responsible for keeping themselves apprised of the current schedule by locating the schedule through E*Trade's voluminous website.

56. In the event this Court finds the Broker Customer Agreement unconscionable, unenforceable or otherwise inapplicable, under principles of equity and good conscience E*Trade should not be permitted to retain the money belonging to Plaintiffs and the Class that E*Trade unjustly received as a result of charging and collecting $40 quarterly inactivity fees from its customers.

57. E-Trade knowingly appreciates the benefits of these quarterly inactivity fees and should be required to make restitution to Plaintiffs and the Class.

58. As an actual and proximate result of E*Trade's conduct, Plaintiffs and the Class members have suffered damages in the form of the $40 quarterly inactivity fees they were charged, plus interest, costs, lost opportunity, and consequential damages.

WHEREFORE, and in the alternative to Count I, Plaintiffs, individually and on behalf of the putative class, respectfully pray for an Order requiring E*Trade to make restitution to Plaintiffs and the putative Class of all monies wrongfully retained relating to E*Trade's imposition of the $40 quarterly inactivity fees, plus all other actual and consequential damages in an amount to be proven at trial, plus interest and costs.

**Count III: Alternative Claim for Violation of Cal. Civ. Code § 1671**
**(On behalf of Plaintiffs and the Class)**

59. Plaintiffs incorporate and re-allege paragraphs 1-40 as if set forth fully herein.

60. In the alternative to Counts I and II, E*Trade's unilateral charging of Plaintiffs and the Class members for $40 quarterly inactivity fees are prohibited liquidated damages in violation of Cal. Civ. Code § 1671.

61. Insofar as the imposition of the $40 quarterly inactivity fees is considered to have been properly added as a contractual term to the Brokerage Customer Agreement, the terms of the inactivity fee imposed a contractual obligation on Plaintiffs and the Class members to use their E*Trade accounts to make at least one trade during each fiscal quarter, which a customer would supposedly breach by failing to make such a trade.

62. The imposition of a $40 penalty for a failure to make at least one trade during the quarter constitutes a prohibited penalty in the case of a customer's breach under Cal. Civ. Code § 1671.

63. Imposing the $40 quarterly inactivity fee provision is unreasonable in light of the circumstances existing at the time the contract was made. No such requirement existed at that time. Rather, the requirement was purportedly added through an unlinked webpage buried on E*Trade's website only obtainable through a search. The fee schedule purports to create a new contractual obligation that, ultimately, is a prohibited penalty that fails to account for the damages E*Trade would actually suffer in case no trade was made during the quarter.

64. Plaintiffs' E*Trade accounts were personal investment accounts, and they did not use the accounts for business purposes.

65. To the extent the contract is considered one for the retail purchase of personal services primarily for personal purposes, even if there were an express contractual provision allowing for the imposition of the fees, the fees are impermissible given the nature of the case because it would not be impracticable or extremely difficult to fix the actual damage that E*Trade would experience from a customer's failure to make a single trade during the quarter. On information and belief, E*Trade charges customers approximately $12.99 per trade.

66. As an actual and proximate result of E*Trade's imposition of the unlawful penalties, Plaintiffs and the Class members suffered actual damages in the amount of the fees, interest, lost opportunity, and other actual and consequential damages.

WHEREFORE, and in the alternative to Counts I and II, Plaintiffs, individually and on behalf of the putative Class, respectfully pray for a declaration that E*Trade's $40 quarterly inactivity fee is an unlawful penalty in violation of Cal. Civ. Code § 1671, and award actual and consequential damages in an amount to be proven at trial, plus interest, costs and reasonable attorneys fees.

**Count IV: Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 *et. seq.***
**(On behalf of Plaintiffs and the Class)**

67. Plaintiffs incorporate and re-allege paragraphs 1-66 as if set forth fully herein.

68. E*Trade's conduct in charging and collecting $40 quarterly inactivity fees from its customers constituted unlawful, unfair, and fraudulent practices under the UCL.

*Unlawful Conduct*

69. As explained above in Count III, insofar as the imposition of the $40 quarterly inactivity fees is considered to have been added as a contractual term to the Brokerage Customer Agreement, the fees are prohibited penalties under Cal. Civ. Code § 1671.

*Unfair Conduct*

70. E*Trade's conduct as described above in charging $40 quarterly inactivity fees where no contractual provision permitted E*Trade to charge or collect such monies constitutes unfair conduct under the UCL.

13

71. Insofar as E*Trade's ability to charge a $40 quarterly inactivity fee is considered to have properly been added as a contractual term to the Brokerage Customer Agreement, E*Trade's charging of such fees constitutes the imposition of prohibited penalties under Cal. Civ. Code § 1671 and unfair conduct under the UCL as well.

72. The injury suffered by Plaintiffs and the Class members is substantial in both the amount of fees wrongfully collected as well as the lost opportunity from having their investments liquidated.

73. The injury to Plaintiffs and the Class members is not outweighed by any countervailing benefits to consumers or competition. The only entity to benefit from the imposition of the $40 quarterly inactivity fees was E*Trade itself.

74. The injury could not reasonably have been avoided by Plaintiffs or the other Class members. E*Trade's customer service representatives refused to listen when customers called to complain, and instead simply insisted that E*Trade had the legal right to impose such charges. Furthermore, the injury was unavoidable. E*Trade acted unilaterally and E*Trade did not collect the fees until the accounts were in fact liquidated and E*Trade used the proceeds to pay itself the inactivity fees.

*Fraudulent Conduct*

75. E*Trade intentionally misled Plaintiffs and the Class members by making materially false statements or concealing material facts, including:

    (a) that E*Trade would not charge any fees for a customer whose account is inactive for a period of time (and E*Trade's concealment that it would charge such fees); and

    (b) that E*Trade had the authority to charge the $40 quarterly inactivity fees.

76. The statement in paragraph 75(a) was false as E*Trade actually imposed such charges.

77. The statement in paragraph 75(a) was made by E*Trade to its customers on E*Trade's website version of the Brokerage Customer Agreement and its "View Commissions &

1 Fees" website page that indicated no inactivity fees would be imposed.

78. Plaintiffs and the Class members suffered damages because Plaintiffs and the Class members reasonably relied on E*Trade's false representations that no inactivity fees would be charged in that Plaintiffs and the Class members kept their accounts open instead of closing them before E*Trade could liquidate the account balances like Plaintiffs and the Class members would have done had they known E*Trade actually would collect such charges by liquidating their accounts. In addition to keeping their accounts open, Plaintiffs and the Class members did not make quarterly trades in reliance on E*Trade's statements that E*Trade would not collect fees for such inactivity.

79. As an actual and proximate result of E*Trade's false statements in paragraph 75(a), Plaintiffs and the Class members suffered damages in the form of the quarterly inactivity fees they paid and also having their accounts liquidated.

80. The statement in paragraph 75(b) was false because E*Trade had no such contractual authority to impose such inactivity fees.

81. The statement in paragraph 75(b) was made by E*Trade via notations on its customers' online E*Trade accounts when E*Trade assessed such charges against the accounts. The statement in paragraph 75(b) was repeated by E*Trade's customer service representatives when customers called to complain about the imposition of the $40 quarterly inactivity fees.

82. The statement in paragraph 75(b) actually and proximately caused Plaintiffs and the Class members to suffer damages because E*Trade unilaterally imposed the charges and liquidated the customer's accounts to cover the amount of inactivity fees purportedly owed by the customers.

83. As an actual and proximate result of E*Trade's false statements in paragraph 75(b), Plaintiffs and the Class members suffered damages in the form of the quarterly inactivity fees they paid and having their accounts liquidated.

84. The statements in paragraphs 75(a) and (b) were likely to mislead a reasonable consumer and members of the public. Members of the public were in fact deceived as a result of

these false statements of material fact and concealment of material fact.

WHEREFORE, Plaintiffs, individually and on behalf of the putative Class, respectfully pray for a declaration that E*Trade's $40 quarterly inactivity fee constitutes illegal, unfair, and fraudulent business practices in violation of the UCL, enjoin E*Trade from charging and collecting such fees without a contractual basis, disgorge any monies wrongfully retained by E*Trade from the $40 quarterly inactivity fees, require E*Trade to make restitution to the Class, and award costs and reasonable attorneys fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Joseph Roling and Alexander Landvater, on behalf of themselves and the putative class, pray for the following relief in addition to that set forth above specifically under each Count:

A. Certify this case as a class action on behalf of the Class described above; appoint Roling and Landvater as Class representatives; and appoint their counsel as class counsel;

B. Declare that the actions of E*Trade, as set out above, result in breach of contract, or, alternatively, unjust enrichment requiring restitution, or alternatively a violation of Cal. Civ. Code § 1671 requiring damages, and, in all cases, a violation of the UCL warranting the imposition of injunctive relief;

**C.** Enter judgment against E*Trade for all damages caused by its conduct and,

D. Award restitution against E*Trade for all money that it has to which Plaintiffs and the Class are entitled in equity;

E. Award Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees, to the extent allowable;

F. Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable;

G. Enter injunctive or other relief as is necessary to protect the interests of Plaintiffs

16

| | |
|---|---|
| 1 | and the Class; and |
| 2 |     H.    Award such other and further relief as equity and justice may require. |

**JURY DEMAND**

Plaintiffs request a trial by jury of all issues so triable.

Dated: April 28, 2010

                              Respectfully submitted,

                              JOSEPH ROLING and ALEXANDER LANDVATER, individually and on behalf of all others similarly situated,

                              By:

                              /s/ Sean P. Reis_____

                              Sean Reis (SBN 184044)
                              sreis@edelson.com
                              EDELSON MCGUIRE, LLP
                              7700 Irvine Center Drive, Suite 800
                              Irvine, California 92618
                              Telephone: (714) 352-5200
                              Facsimile: (714) 352-5201

                              Jay Edelson (*Pro Hac Vice* to be sought)
                              jedelson@edelson.com
                              Steven L. Lezell (Admitted *Pro Hac Vice*)
                              slezell@edelson.com
                              Rafey S. Balabanian (*Pro Hac Vice* to be sought)
                              rbalabanian@edelson.com
                              Michael Aschenbrener (Admitted *Pro Hac Vice*)
                              maschenbrener@edelson.com
                              EDELSON MCGUIRE, LLC
                              350 North LaSalle Street, Suite 1300
                              Chicago, IL 60654
                              Telephone: (312) 589-6370
                              Facsimile: (312) 589-6378