EDELSON MCGUIRE LLP
Sean P. Reis (SBN 184044)
(sreis@edelson.com)
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

EDELSON MCGUIRE LLC
Jay Edelson (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
(swoodrow@edelson.com)
Ari J. Scharg (Admitted *Pro Hac Vice*)
(ascharg@edelson.com)
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Counsel for Plaintiffs* JOSEPH ROLING
and ALEXANDER LANDVATER

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ROLING and ALEXANDER LANDVATER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>E*TRADE SECURITIES, LLC, a Delaware limited liability company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  3:10-cv-00488-EMC<br><br>[Honorable Edward M. Chen]<br><br>**PLAINTIFFS' NOTICE AND MOTION FOR LEAVE TO FILE AND SERVE A SECOND AMENDED COMPLAINT**<br><br>Date:  December 30, 2011<br>Time:  1:30 p.m.<br>Courtroom:  5, 17th Floor |

To **ALL PARTIES** and their attorneys of record:

**PLEASE TAKE NOTICE THAT** on December 30, 2011, at 1:30 p.m. (PST) or as soon thereafter as the matter may be heard in the courtroom of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Joseph Roling and Alexander Landvater will move the Court for leave to file and serve a Second Amended Complaint in this action.

This Motion is made pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and is based upon this Notice and Motion, the accompanying Memorandum of Points and Authorities, all of the documents and evidence in the record, and any oral argument as may be present at the hearing on this Motion.

Dated: November 23, 2011    By: /s/ Rafey S. Balabanian

One of Plaintiffs' Attorneys

EDELSON MCGUIRE LLC
Jay Edelson (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
(swoodrow@edelson.com)
Ari J. Scharg (Admitted *Pro Hac Vice*)
(ascharg@edelson.com)
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

EDELSON MCGUIRE LLP
Sean P. Reis (SBN 184044)
(sreis@edelson.com)
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

*Counsel for Plaintiffs* JOSEPH ROLING, ALEXANDER LANDVATER, and ERIC GOGULSKI

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AND SERVE A SECOND AMENDED COMPLAINT

As stated in both their original and amended complaint, Plaintiffs have always maintained that amending the class definition in this case (and, consequently, the underlying pleadings) would become necessary following discovery. (Dkt. Nos. 1, ¶ 34; 14, ¶ 34.) As matters stand, Plaintiffs have received and reviewed thousands of documents produced by E*Trade, along with other discovery produced in this case. Consistent with their predictions, new, previously unavailable information learned through discovery has shown that amendments to the class definition – along with the underlying counts and allegations – are necessary.

During a telephone conference on October 28, 2011, Plaintiffs' counsel notified E*Trade's attorneys that Plaintiffs planned to seek leave to amend the pleadings to add an additional plaintiff and conform the allegations to the proofs adduced in discovery. In response, E*Trade's counsel indicated that while they did not want to take a position without having an opportunity to analyze the proposed amendment, it may be futile for E*Trade to oppose an amendment given the early stage of discovery. On November 7, 2011, Plaintiffs' counsel sent the proposed Second Amended Complaint to E*Trade's counsel along with a request, consistent with what was discussed during the telephone conference, for a stipulation granting Plaintiffs leave to amend. Even though E*Trade's counsel requested until November 18, 2011 to provide E*Trade's position on the proposed amended pleading, E*Trade's counsel ultimately never responded. Accordingly, pursuant to Fed. R. Civ. P. 15(a)(2) and Civil L.R. 7-1, Plaintiffs respectfully move the Court for leave to file and serve their Second Amended Complaint, attached hereto as Exhibit 1. In support, Plaintiffs state as follows:

### I.   FACTUAL AND PROCEDURAL BACKGROUND

*Plaintiffs' Original and Amended Complaints*

On February 3, 2010, Plaintiff Joseph Roling filed his original class action complaint against Defendants E*Trade and DOES 1-50 (collectively referred to as "E*Trade" or "Defendant"), alleging that E*Trade unlawfully charged and collected AMFs from thousands of class members. (Dkt. No. 1.) The Complaint generally alleged that, its conduct notwithstanding,

E*Trade lacked the contractual right to charge its customers such fees.  (*See*, *e.g.*, Dkt. No. 1, ¶¶ 3-8.)  Those allegations stemmed from, first, E*Trade's Brokerage Customer Agreement (the document purportedly governing E*Trade's relationship with its customers, which does not, itself, give E*Trade a right to collect account maintenance fees ("AMFs")) and, second, the fee schedules purportedly available on the E*Trade website (at least one of which stated that, *inter alia*, E*Trade would not charge such fees).  (Dkt. No. 1, ¶¶ 3-4.)  On April 28, 2010, and before receiving E*Trade's answer to the complaint or any discovery responses, Plaintiff Roling filed an amended complaint as a matter of right, adding Alexander Landvater as an additional representative plaintiff, along with factual allegations regarding Mr. Landvater's individual experiences.  (Dkt. No. 14.)

Consistent with the claims and allegations in the original complaint, Plaintiffs Roling and Landvater sought to represent themselves and a class of similarly situated individuals consisting of "[a]ll persons in the United States who had an E*Trade Securities brokerage account that E*Trade charged at least one $40 quarterly inactivity fee for any fiscal quarter during which the customer did not make at least one trade."  (Dkt. Nos. 1, 14.)  As before, the class definition was constructed from the information then available to Plaintiffs and investigation conducted by their attorneys, without having received E*Trade's answer to the complaint or any discovery in the matter.  (Dkt. Nos. 1, 14.)

*E*Trade's Motion to Dismiss and Transfer Venue*

On May 27, 2010, and in lieu of answering Plaintiffs' amended pleadings, E*Trade moved to both dismiss the amended complaint and transfer venue to the Southern District of New York.[1]  (Dkt. Nos. 20, 23.)  In its motion to dismiss, E*Trade argued that it had "strictly complied with its contract," was not unjustly enriched, did not collect liquidated damages, and did not engage in unfair competition.  (Dkt. No. 20.)  On November 22, 2010, Judge Marilyn Patel granted in part

---

[1]  E*Trade's Motion to Transfer was based in substantial part on its contention that E*Trade no longer maintained a presence in Menlo Park, California, and nearly all of the relevant witnesses from E*Trade in this lawsuit are located in New York.  As will be the subject of the appropriate motion, discovery regarding the location of E*Trade's witnesses has revealed that E*Trade's assertions proffered in favor of a transfer to New York amount to factual misrepresentations to the Court.

and denied in part E*Trade's motion to dismiss – only dismissing those claims based on E*Trade's alleged use of liquidated damage provisions in its contracts and those brought under California's Unfair Competition Law (the "UCL") that lacked a connection to the State of California. (Dkt. No. 63.) Judge Patel additionally denied E*Trade's motion to transfer venue, holding that this District was the appropriate venue for this action. (Dkt. No. 63.)

*E*Trade Answers the Amended Complaint and Produces Discovery on a Rolling Basis*

With its motion to dismiss denied almost in its entirety, E*Trade filed its answer to the amended complaint on March 4, 2011. (Dkt. No. 71.) In the following month, April 2011, E*Trade produced over 1,000 pages of documents in response to Plaintiffs' document requests and responded to Plaintiff Roling's First Set of Interrogatories and Requests for Admission. (Declaration of Rafey S. Balabanian [cited as "Balabanian Decl."], attached as Exhibit 2, ¶ 2.) Four months later, in August 2011, E*Trade produced additional documents responsive to Plaintiffs' first set of document requests (again producing over 1,000 pages) and submitted supplemental responses to Plaintiff Roling's First Set of Interrogatories. (Balabanian Decl. ¶ 3.) In September 2011, E*Trade produced additional documents, just prior to the depositions of both Plaintiffs Roling and Landvater, which were taken by E*Trade on September 28-29, 2011. (Balabanian Decl. ¶¶ 4-5.) In October 2011, E*Trade responded to Plaintiff Landvater's First Set of Interrogatories. (Balabanian Decl. ¶ 6.) Then, in November 2011, E*Trade once again supplemented its responses to Plaintiff Roling's First Set of Interrogatories. (Balabanian Decl. ¶ 7.) Plaintiffs are currently in the process of completing the depositions of E*Trade's designated Rule 30(b)(6) witnesses, which are scheduled through the end of November 2011. (Balabanian Decl. ¶ 8.)

Over the course of the discovery process, Plaintiffs learned information critical to their claims that was otherwise not available to them. For example, whereas Plaintiffs' first amended complaint generally alleged that E*Trade unlawfully charged its customers $40 AMF (Dkt. No. 14, ¶¶ 4-6), discovery has revealed both that E*Trade customers were, as late as November 2000, not charged AMFs and then, from that point on, instituted and then increased its AMF up to the $40 mark per quarter. (Ex. 1, ¶ 10.) Given this information, Plaintiffs seek to amend the

complaint to account for E*Trade's institution of AMFs and additionally to add Eric Gogulski (a former E*Trade customer who signed up for an account in December of 1999, before AMFs were charged) as a named representative to the lawsuit. (Ex. 1, ¶¶ 14, 22-30.)

Further, the proposed second amended complaint couches E*Trade's liability on specific information learned through the discovery process, specifically, and among other claims and allegations: (1) the various iterations of E*Trade's Brokerage Customer Agreements and Fee Schedules, (2) changes made to those documents, and (3) E*Trade's efforts (or lack thereof) to communicate with its customers regarding such changes. (*See* Ex. 1, ¶¶ 6-13.) In the end, the proposed second amended complaint follows the same basic theories and causes of actions pleaded in the original and first amended complaint, but tailors the pleadings to the facts and evidence learned through the discovery process.

*Plaintiffs Prepare their Second Amended Complaint*

After drafting their amended pleadings, Plaintiffs' counsel reached out to E*Trade's attorneys on October 28, 2011, alerting them to the fact that Plaintiffs intended to amend their class action complaint and add Eric Gogulski as a named representative to the lawsuit. (Balabanian Decl. ¶ 9.) Thereafter, on November 7, 2011, Plaintiffs counsel again reached out to E*Trade's lawyers, providing them with a copy of the proposed second amended complaint and inquiring as to whether Defendants would stipulate to the filing of the proposed amended pleading. (Balabanian Decl. ¶ 10.) Plaintiffs additionally indicated their willingness to immediately produce all relevant, non-privileged documents relating to Mr. Gogulski, and agreed that E*Trade would be entitled to take Mr. Gogulski's deposition as soon as possible. (Balabanian Decl. ¶ 10.) Finally, and hoping to avoid any unnecessary delay, Plaintiffs asked E*Trade to respond as to whether they would so stipulate by November 11, 2011, noting that if no response was received by then, Plaintiffs would presume that E*Trade would not stipulate to the filing. (Balabanian Decl. ¶ 10.) In response, E*Trade requested an additional week – until November 18, 2011 – to review and provide E*Trade's position on the proposed amendment. (Balabanian Decl. ¶ 11.) Plaintiffs agreed to the new deadline, on the condition that E*Trade not use the intervening week as a basis for objecting to the proposed amendment. (Balabanian Decl. ¶ 12.) Having

received no response from E*Trade by its own November 18th deadline, not even a courtesy message acknowledging or explaining the delay, (Balabanian Decl. ¶ 13), Plaintiffs now move the Court for leave to file their second amended complaint.

## II. LEGAL STANDARD

After a party has amended a pleading once as a matter of course, further amendments require leave of the court, or consent of the adverse party. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The Federal Rules of Civil procedure "advise[] the court that 'leave shall be freely given when justice so requires[,]'" a policy that the Ninth Circuit applies with "extreme liberality."[2] *Id.* (quoting Fed. R. Civ. P. 15(a)). Typically, the four factors of (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment "are commonly used to determine the propriety of a motion for leave to amend." *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007) (citations omitted); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). The factors, however, are not equal in weight and the Ninth Circuit has long-held that while the "decision to grant or deny leave to amend is within the discretion of the court . . . '[o]rdinarily, leave to amend should be freely given in the absence of prejudice to the opposing party.'" *Kenlston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981)); *see Eminence Capital*, 316 F.3d at 1052 ("Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend").

In this case, none of the above-referenced factors are present. As stated above, the proposed second amended complaint merely updates Plaintiffs' allegations in light of and consistent with the discovery exchanged between the parties to-date and, as a consequence, refines Plaintiffs' underlying theories of liability. Accordingly, this Court should grant Plaintiffs leave to amend.

---

[2] In this case, the "for good cause" standard used in the context of Rule 16 does not apply because this Court has not entered a scheduling order setting a cut-off date for the amendment of pleadings. *See Artis v. Deere & Co.*, C 10-05289 WHA, 2011 WL 4916356 (N.D. Cal. Oct. 17, 2011) (citing Fed. R. Civ. Pro. 16(b)(4)); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

### A. There is No Bad Faith Underlying Plaintiffs' Proposed Amendment.

As stated, Plaintiffs, through their proposed second amended complaint, seek to, first, comport their factual and legal allegations to the facts and evidence learned through discovery and, second, add an additional plaintiff to ensure adequacy of representation.  Such motives are far from the improper introduction of amendments "solely for delay or improper purpose." *See Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005).  Indeed, Plaintiffs filed the instant motion only after reaching out to E*Trade, providing advance copies of the proposed second amended complaint, and, per E*Trade's own request, giving E*Trade an additional seven days to review the documents and consider whether it would stipulate to the filing.  (Balabanian Decl. ¶¶ 9-12)  Such conduct, taken with Plaintiffs' above-described purpose in amending, speaks strongly against any purported showing of bad faith.

### B. There Was No Undue Delay in Filing this Motion.

Plaintiffs did not unduly delay their instant request for leave to amend.  "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment [at the time of] the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  Other indications of undue delay include whether the movants previously and repeatedly informed the court of their intent to amend, but continuously delayed any actual filing. *See, e.g., id.*

Here, and at the time the original and first amended complaints were filed, Plaintiffs' knowledge of E*Trade's policies and practices regarding AMFs was based on their own personal experiences and initial investigations made without the benefit of discovery.  As discussed more fully above, Plaintiffs simply could not conduct the analysis needed to develop their fully matured theories of liability – as memorialized in the proposed second amended complaint – until receiving and reviewing the documents and other discovery provided by E*Trade.  Further, this is the first instance where Plaintiffs have sought leave of the Court to file amended pleadings that provide "new" claims and allegations, as the first amended complaint was filed as a matter of right and only added Plaintiff Landvater as a named representative.

In the end, Plaintiffs' request for leave to amend is being made as soon as practicably possible, before the close of discovery, and only after notifying Defendants of their intent to so-amend. Especially considering E*Trade's rolling discovery production in this case, there is simply no indication that Plaintiffs have been dilatory in seeking to amend.

### C. The Second Amended Complaint Causes No Undue Prejudice to E*Trade.

The filing of Plaintiffs' second amended complaint will not cause undue prejudice to E*Trade. "To overcome Rule 15(a)'s liberal policy with respect to the amendment of pleadings[,] [Defendant's] showing of prejudice must be substantial." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010) (citation omitted); *accord DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("the party opposing amendment bears the burden of showing prejudice"). As such, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Stearns*, 763 F.Supp.2d at 1158. Rather, findings of undue prejudice are reserved for situations such as where a plaintiff moves for amendment "on the eve or close of discovery, . . . when there were many previous efforts to amend, . . . [or] when the amendment was brought to destroy diversity and the jurisdiction of the court. *Abels*, 229 F.R.D. at 156 (citing representative cases for each scenario).

First, and far from coming on the eve or close of discovery, the amended class definitions, along with the amended allegations and claims, are based on the facts gleaned from discovery produced to date and will not disrupt the already established trial schedule. *See Stuart v. Radioshack Corp.*, 2009 WL 281941, at *3 (N.D. Cal. Feb. 5, 2009) (allowing amendment of the complaint to broaden the class definition where additional discovery, if any, would not disturb the trial schedule). In this case, and because the amendments merely refine Plaintiffs' legal theory under the same causes of action, the only new discovery required is the deposition of and discovery relating to Mr. Gogulski, Plaintiffs' new named representative. Further, the discovery deadline in this case is set for January 3, 2012, with a February 17, 2012 deadline for dispositive motions (Dkt. No. 88), and Plaintiffs have indicated that they stand ready to produce all relevant, non-privileged documents relating to Mr. Gogulski's experience with E*Trade, and to present Mr.

Gogulski for his deposition. (Balabanian Decl. ¶ 10.) In all likelihood, then, there will be no need to deviate from the already-established schedules in this case based on the proposed amendment, as the timing of Plaintiffs' amendment ensures that E*Trade has ample time to both conduct discovery with respect to Mr. Gogulski, and file dispositive motions (should it choose to).

Second, Plaintiffs have not repeatedly sought leave to amend or otherwise substantively altered their pleadings over the course of this litigation. As described above, Plaintiffs filed their first amended complaint as a matter of right (i.e., without seeking leave of the Court) *solely* to add Plaintiff Landvater as a named representative of the class action lawsuit. Accordingly, the proposed second amended complaint represents the *first* time E*Trade is called to answer legal theories that differ in any way from their original complaint, which E*Trade only answered earlier this year.

Further, E*Trade cannot seriously contend that it is surprised by the updated allegations espoused by the proposed second amended complaint. Whereas Plaintiffs learned, through discovery and for the first time, details regarding E*Trade's history of assessing (or not assessing) AMFs, altering its Brokerage Customer Agreements and Fee Schedules, and various efforts at commutating with its customers (Ex. 1, ¶¶ 6-13), E*Trade has been in control of this same information since the filing of the original complaint. Similarly, the legal bases of liability, grounding the seven counts of the proposed second amended complaint, also come as no surprise. Namely, the second amended complaint still embraces the same causes of action found in the original and first amended complaints: (1) breach of contract, (2) unjust enrichment, and (3) violation of state consumer protection statutes.[3] (*Cf.* Dkt. Nos. 1, 14 *with* Ex. 1.) Thus, E*Trade cannot be surprised that Plaintiffs now challenge these familiar facts with and through their class action complaint.

Third, the proposed second amended complaint does not result in drastic alterations to the

---

[3] Indeed, the only truly "new" legal theory set forth in the proposed second amended complaint is Plaintiffs' claim under the New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349, which is substantially similar to the claims brought under the UCL, and is being brought to account for the revised (from California to New York) choice of law provision found in E*Trade's own Brokerage Customer Agreements, which only came to light during discovery. (Ex. 1, ¶¶ 117-125.)

overall litigation, such as altering this Court's jurisdiction over the case. In contrast, and as stated above, the second amendment complaint simply conforms the legal pleadings to the facts adduced through the discovery process and adds a new representative Plaintiff who was directly affected by those same facts.

In the end, apart from being called to answer the amended pleading and potentially take the deposition of (and review documents from) Mr. Gogulski, the instant motion and proposed second amended complaint do not prejudice E*Trade.

### D. The Amendments Are Not Futile.

Any argument regarding futility is belied by the simple fact that Plaintiffs seek leave to file a second amended complaint to conform the pleadings to the evidence, and to amend the class definitions, which is a procedure common in class actions. *See*, *e.g.*, *Stuart*, 2009 WL 281941, at *2, 4. While challenges to pleadings "are usually deferred until after the pleading has been granted," some amendments may be futile where "no set of facts can be proved under the amendment that would constitute a valid claim or defense." *Abels*, 229 F.R.D. at 157 (citations omitted). Thus, for example, an amendment may be futile where a plaintiff lacks standing to bring a newly added allegation, or where a new claim is time-barred by an applicable statute of limitations. *See*, *e.g.*, *McGlamry v. Transmeta Corp.*, C 04-02475 WHA, 2005 WL 2216951, at *3 (N.D. Cal. July 25, 2005) (citing *Toombs v. Leone,* 777 F.2d 465, 468 (9th Cir.1985)).

No such circumstances exist here. Simply put, the proposed second amended complaint is comprised of the same causes of action as the original complaint (save the "new" allegation under the New York Consumer Protection Law) and generally amends the pleadings to conform to all available evidence. Furthermore, every count in the proposed second amended complaint – along with the allegations concerning Mr. Gogulski – still concerns and challenges E*Trade's conduct of charging its customers AMFs. As such, there is no question that the allegations of the proposed Second Amended Complaint "relate back" to the filing of the original complaint, for purposes of Rule 15(c). Fed. R. Civ. P. 15(c) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set-out – or attempted to be set out – in the original pleading").

1     **WHEREFORE**, Plaintiffs Joseph Roling and Alexander Landvater, respectfully request
2  that this Honorable Court enter an Order (i) granting their Motion for Leave to File and Serve a
3  Second Amended Complaint, (ii) permitting Plaintiffs to file and serve the Second Amended
4  Complaint attached as Exhibit 1, *instanter*, and (iii) granting such other and further relief as the
5  Court deems equitable and just.

Dated: November 23, 2011                    Respectfully submitted,

JOSEPH ROLING, and ALEXANDER LANDVATER, individually and on behalf of all others similarly situated,

By: /s/ Rafey S. Balabanian

EDELSON MCGUIRE LLC
Jay Edelson (Admitted *Pro Hac Vice*)
(jedelson@edelson.com)
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
(rbalabanian@edelson.com)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
(swoodrow@edelson.com)
Ari J. Scharg (Admitted *Pro Hac Vice*)
(ascharg@edelson.com)
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

EDELSON MCGUIRE LLP
Sean P. Reis (SBN 184044)
(sreis@edelson.com)
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

*Counsel for Plaintiffs* JOSEPH ROLING and ALEXANDER LANDVATER

**CERTIFICATE OF SERVICE**

    I, Rafey S. Balabanian, an attorney, hereby certify that on November 23, 2011, I served the above and foregoing *Plaintiffs' Notice of Motion and Motion for Leave to File and Serve a Second Amended Complaint* by causing true and accurate copies of such paper to be filed with the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                                    /s/ Rafey S. Balabanian