UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH ROLING, *et al.*,

    Plaintiffs,

v.

E*TRADE SECURITIES LLC,

    Defendant.
_____/

No. C-10-0488 EMC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

**(Docket No. 90)**

Plaintiffs Joseph Roling and Alexander Landvater have filed a class action against E*Trade Securities, LLC, asserting that it unlawfully charged and collected account inactivity fees from its customers. Currently pending before the Court is Plaintiffs' motion for leave to file and serve a second amended complaint ("SAC"). Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

The original complaint was initiated by Mr. Roling in February 2010. In April 2010, an amended complaint was filed. The first amended complaint ("FAC") essentially added Mr. Landvater to the case but otherwise did not substantively change the complaint.

In the FAC, Plaintiffs allege as follows. E*Trade has a brokerage customer agreement – a consumer adhesion contract – which provides in relevant part that the customer authorizes E*Trade to automatically debit from his or her account, *inter alia*, any charges or fees. *See* FAC ¶ 3. The agreement further provides that a fee schedule is available on E*Trade's website and that E*Trade

1  may modify the fee schedule at any time by posting a modified schedule on the website. *See* FAC ¶
2  3. The brokerage customer agreement is made available for customer review on the E*Trade
3  website. However, there is no hyperlink to the fee schedule; instead, "customers must search the
4  website to locate the contract's purported terms." FAC ¶ 3; *see also* FAC ¶ 54 (alleging that
5  "customers are required to court E*Trade's website for the terms of the agreement"). Moreover, on
6  the website, there is a fee schedule titled "View Commissions & Fees" (also known in this litigation
7  as the "Brown Co. Addendum") which actually states that E*Trade will not charge inactivity fees.
8  *See* FAC ¶ 4. In spite of this statement in the fee schedule, E*Trade has charged and collected
9  inactivity fees from its customers ($40 per quarter). *See* FAC ¶| 5. Plaintiffs maintain that, by doing
10 so, E*Trade has breached its contracts with its customers. *See* FAC ¶ 45. Plaintiffs further claim
11 that, to the extent E*Trade amended its contracts to allow it to charge and collect inactivity fees,
12 "E*Trade failed to give proper notice to Plaintiffs or the public of any such charges." FAC ¶ 48.
13 Based on these allegations, Plaintiffs asserted claims for, *inter alia*, breach of contract, unjust
14 enrichment/restitution, and violation of California Business & Professions Code § 17200.

15       In November 2011 – *i.e.*, a year and a half after the FAC was filed – Plaintiffs filed the
16 currently pending motion for leave to file a SAC. The proposed SAC modifies the FAC in the
17 following ways.

18       First, the proposed SAC adds a new plaintiff, Eric Gogulski.

19       Second, the proposed SAC includes a new cause of action – *i.e.*, a claim for violation of New
20 York General Business Law § 349 (a consumer protection statute). *See* N.Y. Gen. Bus. Law §
21 349(a) (providing that "[d]eceptive acts or practices in the conduct of any business, trade or
22 commerce or in the furnishing of any service in this state are hereby declared unlawful").

23       Third, the proposed SAC contains new legal theories for the existing causes of action. More
24 specifically, the proposed SAC alleges that E*Trade had an implied contractual duty to accurately
25 bill its customers and that, at the very least, customers are bound only by the terms of the customer
26 ///
27 ///
28 ///

agreement and fee schedule in place at the time of their account origination.[1] *See, e.g.*, SAC ¶¶ 67, 82-84, 87.

In addition to the above, Plaintiffs have asked, in their reply brief, to revise their proposed SAC so that they can include allegations about the Brown Co. Addendum, *i.e.*, the fee schedule which stated that inactivity fees would not be charged. As indicated above, the FAC contained allegations about the Brown Co. Addendum, but many were dropped and/or downplayed in the proposed SAC. Plaintiffs ask for an opportunity to re-introduce allegations about the Brown Co. Addendum as a part of the SAC now that it is clear that a "bug" on E*Trade's website made the Brown Co. Addendum available to all (not just a select group of) retail customers before June 2010.[2]

Under the CMC schedule currently in place, discovery for the first phase (*i.e.*, class discovery) was completed on January 3, 2012. Plaintiffs' motion for class certification is to be filed by February 10, 2012, the opposition is due on March 23, 2012, and a hearing on the motion is set for May 4, 2012.

## II. DISCUSSION

A.  Legal Standard

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides in relevant part that a "court should freely give leave [to] amend when justice so requires." Fed. R. Civ. P. 15(a). In general, "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*,

---

[1] To the extent E*Trade argues that there is also a new legal theory in the SAC because the SAC includes allegations that the fee schedule is extrinsic to the customer agreement, *see, e.g.*, SAC ¶¶ 63-64, that theory is adequately included in the FAC. While the FAC admittedly does not include an express allegation that the fee schedule is extrinsic to the customer agreement, it does contain allegations that, *e.g.*, customers were required to scour E*Trade's website for the fee schedule and that E*Trade did not notify customers of changes. *See, e.g.*, FAC ¶ 54. These allegations basically amount to the theory that the fee schedule should be considered extrinsic to the customer agreement.

[2] Initially, E*Trade represented to Plaintiffs that the Brown Co. Addendum was available only to former customers of the Brown Co., a brokerage firm that E*Trade acquired in 2005, and not to all retail customers. During discovery, E*Trade amended that position and informed Plaintiffs that the addendum was in fact available to retail customers but only on or after June 2010. Plaintiffs' counsel, however, was able to access the Brown Co. Addendum on E*Trade's website prior to that date. In November 2011, E*Trade learned that the addendum was in fact available prior to June 2010 as a result of a "bug" on its website.

356 F.3d 1067, 1077 (9th Cir. 2004). Notably, undue delay by itself "is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). There must also be either (1) prejudice to the opposing party, (2) bad faith by the moving party, or (3) futility of the amendment. *See id.* (noting that "[w]e have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment").

B.   <u>Undue Delay</u>

The parties quibble over whether Plaintiffs unduly delayed in seeking the above amendments. While each side's position has some merit, whether Plaintiffs unduly delayed is not dispositive because undue delay by itself is not enough to bar an amendment. The critical issues instead are futility and prejudice. The Court therefore focuses on these issues and addresses undue delay where necessary within the context of these issues.

C.   <u>Futility and Prejudice</u>

    1.   <u>Mr. Gogulski</u>

E*Trade contends that adding Mr. Gogulski to this litigation would be both futile as well as prejudicial. The Court is not persuaded, at least at this juncture, that Mr. Gogulski's claims against E*Trade would necessarily be futile. Nevertheless, the Court is persuaded that, as E*Trade argues, adding him to the lawsuit at this point in the proceedings would be unfairly prejudicial. Class discovery, as well as discovery on the individual claims of the named plaintiffs, has already closed (as of January 3, 2012). While, arguably, the Court could allow for a limited extension of the discovery deadline – *i.e.*, so that E*Trade could conduct discovery vis-à-vis Mr. Gogulski – that discovery likely could not be completed prior to the date E*Trade's opposition to the class certification motion is due (*i.e.*, March 23, 2012). It is reasonable to expect that E*Trade will need to propound written discovery on Mr. Gogulski, conduct a factual investigation into its own files (many of which appear to be archived given that Mr. Gogulski opened his account in 1999) for documents related to Mr. Gogulski, and take Mr. Gogulski's deposition. This will all take some time – particularly because the factual investigation will involve archived material and because the factual investigation, as well as the written discovery, must be completed prior to the deposition.

4

Regarding archived material, E*Trade has conceded that some documents related to Mr. Gogulski may be more readily obtainable (*e.g.*, Mr. Gogulski's statements). However, other documents do not appear to be readily accessible – *e.g.*, E*Trade has represented that determining which notices were sent to Mr. Gogulski will take some time to determine because E*Trade does not maintain, as part of its records on Mr. Gogulski's account, such notices. Furthermore, E*Trade will need to locate evidence establishing that these notices were in fact sent to Mr. Gogulski. While Plaintiffs suggest that E*Trade should not benefit from its failure to maintain better files, this problem could have been obviated had Plaintiffs brought Mr. Gogulski into the litigation earlier. In this respect, Plaintiffs' delay in naming Mr. Gogulski is a material consideration.[3]

Moreover, E*Trade argues with reason that, even prior to conducting any discovery and/or its own factual investigation, it would want to file a 12(b)(6) motion to dismiss Mr. Gogulski's claims on, *inter alia*, statute of limitations grounds. Although the Court does not at this point find Mr. Gogulski's claims necessarily futile, a motion to dismiss has potential merit. E*Trade might also desire to file a motion for summary judgment on Mr. Gogulski's claims after having the benefit of discovery and an independent factual investigation.

In short, adding Mr. Gogulski after class discovery has closed and on the eve of the motion for class certification will inevitably delay hearing and resolution on that motion for months and disrupt the case management schedule herein.

Moreover, the Court notes that adding Mr. Gogulski as a plaintiff – and potential class representative – is of questionable benefit to Plaintiffs' case. The substance of Mr. Gogulski's claims is similar to that of the current Plaintiffs. Notably, at the hearing, Plaintiffs seemed to implicitly concede that Mr. Gogulski is not essential to their case. According to Plaintiffs, they want to add Mr. Gogulski largely because they want to create a full picture as to the history of E*Trade's actions in charging and collecting inactivity fees. Mr. Gogulski had an E*Trade account back in

---

[3] In their papers, Plaintiffs do not provide any real explanation as to why they waited until late October/early November 2011 to try to introduce Mr. Gogulski into the case. *See, e.g.*, Reply at 12 (claiming that "there is no need for Plaintiffs to 'explain when they first learned of [Mr.] Gogulski's claims' or identify where '[Mr.] Gogulski's name . . . came up in E*Trade's discovery responses or documents' because Plaintiffs' addition of [Mr.] Gogulski as a named representative ensures comprehensive and complete representation of the putative class . . . in light of the facts adduced through discovery").

1  1999, several years before Plaintiffs before E*Trade started imposing the contested fees. But
2  Plaintiffs may create that full picture with Mr. Gogulski as a witness; he does not have to be a
3  named plaintiff and/or potential class representative. To the extent Plaintiffs suggested that E*Trade
4  might challenge their ability to adequately represent persons who opened E*Trade accounts before
5  they did, that argument is not especially persuasive. If the same basic E*Trade conduct is being
6  challenged, Plaintiffs have a strong argument that they are adequate class representatives even as to
7  those claimants since the basic legal theory would appear to apply across-the-board.

8  Accordingly, the Court denies Plaintiffs' request to add Mr. Gogulski as a plaintiff to this
9  case.

10     2.    <u>Section 349 Claim</u>

11  New York General Business Law § 349 provides that "[d]eceptive acts or practices in the
12  conduct of any business, trade or commerce or in the furnishing of any service in this state are
13  hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). According to E*Trade, the Court should
14  not permit Plaintiffs to add a § 349 claim to the case because such a claim would be futile.

15  The Court does not agree. More specifically, it cannot say, at least at this juncture in the
16  proceedings, that a § 349 claim would be futile. It is true, as E*Trade argues, that many (if not
17  most) New York courts – both federal and state – have held that § 349 does not apply to securities
18  transactions. *See, e.g.*, *Estate of Pew v. Cardarelli*, No. 5:05-CV-1317, 2009 U.S. Dist. LEXIS
19  90090, at *14-15 (N.D.N.Y. Sept. 29, 2009) (stating that "[d]istrict court decisions in this circuit
20  uniformly apply *Morris* and its progeny to reject GBL § 349 claims based on securities
21  transactions"; adding that "[t]he weight of authority in New York State intermediate appellate courts
22  also holds that GBL § 349(a) does not cover securities transactions"); *Gray v. Seaboard Secs., Inc.*,
23  788 N.Y.S.2d 471, 472-73 (2005) (stating that "[t]he vast majority of courts which have considered
24  the issue have found General Business Law § 349 inapplicable to securities transactions"; adding
25  that the statute is also inapplicable to services ancillary to the purchase of securities). Notably, in
26  *Gray*, the state appellate court extended this holding to services ancillary to the purchase or sale of
27  securities. *See id.* at 473 (rejecting the plaintiffs' argument that their claim under § 349 "relates to
28  the service of providing investment advice and not to the purchase of securities themselves[;]

6

[s]imply stated, we view the promised advice as clearly 'ancillary to the purchase of securities'").

The reasoning underlying these decisions is twofold:

> As aptly outlined in *Morris v Gilbert* (649 F. Supp. 1491, 1497 [1986]), individuals do not generally purchase securities in the same manner as traditional consumer products, such as vehicles, appliances or groceries since "securities are purchased as investments, not as goods to be 'consumed' or 'used.'" Moreover, because the securities arena is one which is highly regulated by the federal government, it is questionable that the "legislature intended to give securities investors an added measure of protection beyond that provided by securities acts."

*Id.*; *see also Yeger v. E*Trade Secs., LLC*, No. 602589/04, Slip Op. at 3-4 (N.Y. Sup. Ct. Jan. 31, 2006) (concluding that alleged unlawful conduct – imposition and collection of fees – did not fall within the scope of § 349 because it was governed instead by federal agency rules; pointing to § 349(d) which states that there is a complete defense in such a case).

But there is also, as Plaintiffs point out, case law in which courts have reached the opposite conclusion. Most notably, in *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639 (2001), a state appellate court stated:

> Given the statute's explicit prohibition of "[d]eceptive acts or practices . . . in the furnishing of any service," and given the Court of Appeals' characterization of the statute as "appl[ying] to virtually all economic activity," we see no basis for invoking any blanket exception under the statute for securities transactions or for limiting the statute's applicability to the sale of "goods."

*Id.* at 640-41. *But see Estate of Pew v. Cardarelli*, No. 5:05-CV-1317, 2009 U.S. Dist. LEXIS 90090, at *15 (N.D.N.Y. Sept. 29, 2009) (stating that "[t]he precedential meaning of the few contrary decisions in the Second and Fourth Departments is unclear, and they do not provide a significant counterweight to the First and Third Department cases[;] [i]n view of the weight of authority in the New York intermediate appellate courts holding that GBL § 349 does not apply to securities transactions, and the many district court decisions in this circuit interpreting New York law and reaching the same conclusion, this Court sees no basis to hold that the New York's high court would decide otherwise").

Given this split in authority, the Court cannot say that a § 349 claim would be futile so as to prohibit an amendment. Furthermore, even if the Court were to follow *Gray* (*i.e.*, E*Trade's

position), it still may be argued that a § 349 claim is not impossible in the case at hand because (1) what is being challenged here is not an actual securities transaction and (2) the services being contested are not ancillary to the purchase or sale of securities – in fact, the conduct being contested is the assessment and collection of fees based on *inactivity* by the customer. *Cf. Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009) (noting that California Consumer Legal Remedies Act applies only to tangible chattels; because life insurance is not a tangible chattel, ancillary services that insurers provide to actual and prospective purchasers of life insurance are not covered by CLRA either); *see also Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 U.S. Dist. LEXIS 37465, at *19 (N.D. Cal. Apr. 15, 2010) (ultimately allowing § 17200 claim based on aiding and abetting of sale of fraudulent securities, not actual sale itself).

E*Trade also makes a passing argument on prejudice, which is not particularly compelling. According to E*Trade, class discovery would have to be reopened if the claim were to be permitted; more specifically, it would need to take discovery on "any nexus between the Plaintiffs' harms (they live, respectively, in Illinois, California and Tennessee) and New York, which is required for a [§ 349] claim." Opp'n at 13. Plaintiffs fairly point out that this argument is questionable given that the later versions of the customer agreement contained a provision stating that the agreement is deemed to have been made in New York. *See* Reply at 10 (citing Exhibit A of proposed SAC, which is one of the customer agreements). But even if Plaintiffs' argument were not given any consideration, E*Trade would not seem any better off. E*Trade has not explained why it could not redepose Plaintiffs (only two individuals) on the limited issue of a factual nexus with New York before March 23, 2012, when its opposition to the motion for class certification is due.

The Court therefore shall permit Plaintiffs to amend the complaint by adding a claim under § 349.

3. <u>New Legal Theories</u>

E*Trade argues next that the Court should not allow Plaintiffs to add new legal theories to the existing causes of action because it would be unfairly prejudicial. According to E*Trade, if the Court were to permit the amendment, then discovery would have to be reopened. The Court does not agree. The only new legal theories offered by Plaintiffs are that (1) E*Trade had an implied

contractual duty to accurately bill its customers and (2) at the very least, customers are bound only by the terms of the customer agreement and fee schedule in place at the time of their account origination. Although new, the legal theories are based on the same underlying allegations of improper inactivity fees being charged and collected by E*Trade. The amendment seeks to advance legal theories based on already discovered factual assertions.

### 4. Brown Co. Addendum

Finally, E*Trade argues that, to the extent Plaintiffs want to have a complaint based on the Brown Co. Addendum, then they should simply rest on the operative complaint, *i.e.*, the FAC. This argument makes little sense. The only question is whether Plaintiffs should be able to revise their proposed SAC to include allegations related to the Brown Co. Addendum or whether such a revision would be prejudicial to E*Trade. The Court concludes that there has not been an adequate showing of prejudice to preclude the proposed revision to the SAC. The FAC already contained allegations about the Brown Co. Addendum. To the extent there may be new allegations based on the "bug," the Court does not see any prejudice to E*Trade as a result. Judge Spero has denied Plaintiffs class discovery on the "bug" issue,[4] *see* Docket No. 118 (order), and E*Trade already seems to have already conducted an investigation into the "bug." *See* Docket No. 115 (Iqbal Decl.). Therefore, E*Trade should be adequately prepared to file an opposition to the class certification motion by March 23, 2012, even with new allegations related to the "bug."

Accordingly, the Court grants Plaintiffs' request to file a revised SAC, one that re-introduces allegations related to the Brown Co. Addendum.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend is granted in part and denied in part. In essence, Plaintiffs' amendments are permitted, except for the amendment which would add Mr. Gogulski to the case as a named plaintiff and/or potential class representative. Plaintiffs shall file and serve their SAC by January 27, 2012.

Finally, for the reasons stated on the record, the parties' competing motions related to

---

[4] The Court acknowledges that, at the hearing, Plaintiffs indicated an intent to "appeal" Judge Spero's order to this Court.

rescheduling of E*Trade's motion for summary judgment and/or Plaintiffs' motion for class certification are both denied.

This order disposes of Docket Nos. 90, 130, and 133.

IT IS SO ORDERED.

Dated: January 24, 2012

_____
EDWARD M. CHEN
United States District Judge