United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ROLING, *et al.*, | No. C-10-0488 EMC |
| Plaintiffs, | |
| v. | **ORDER OVERRULING PLAINTIFFS' OBJECTION TO NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |
| E*TRADE SECURITIES LLC, | |
| Defendant. | **(Docket No. 153)** |
| _____/ | |

On January 17, 2012, Judge Spero issued an order on several discovery disputes that had arisen between the parties. For purposes of this order, the relevant ruling in the January 17 order was Judge Spero's denial of Plaintiffs' request to compel further information related to a "bug" on E*Trade's website. The denial was without prejudice – *i.e.*, the order left open the possibility of merits discovery on the "bug" issue. *See* Docket No. 118 (order). Plaintiffs have now filed an objection to Judge Spero's ruling pursuant to Federal Rule of Civil Procedure 72(a). Having considered the parties' briefs and accompanying submissions, the papers originally submitted to Judge Spero, the transcript for the hearing before Judge Spero, and all other evidence of record, the Court hereby **OVERRULES** Plaintiffs' objection.

### I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit in February 2010. *See* Docket No. 1 (complaint). In the original complaint, one of Plaintiffs' claims was that E*Trade was improperly charging inactivity

fees because a fee schedule available on its website provided that such fees would *not* be charged. In this litigation, that particular fee schedule has been called the "Brown Co. Addendum."

There seems to be no dispute that the individual plaintiffs themselves never accessed the Brown Co. Addendum on E*Trade's website. However, Plaintiffs' counsel was able to access the addendum at or about the time the lawsuit was filed in early 2010. *See* Tr. at 11 (stating that "we were able to conduct a search at the beginning of this lawsuit; and as a result of that search, we were able to pull up the fee schedule that they claim doesn't apply to our plaintiffs"). Even though counsel was able to access the addendum, E*Trade initially denied that the addendum could have been accessed by a retail customer or a member of the public. According to E*Trade, only customers who were former customers of Brown Co., a brokerage that E*Trade acquired in 2005, were able to access the addendum. It was not until August 2011 that E*Trade informed Plaintiffs (through a supplemental discovery response) that, due to a "bug" on its website, the Brown Co. Addendum could in fact be accessed by retail customers and/or the public as of June 2010. At the time, E*Trade believed that the accessibility of the addendum was due to its migration to a new search platform, which took place in or about June 2010. In or about November 2011, however, E*Trade learned that the bug could have been introduced prior to June 2010, although it could not determine exactly when. E*Trade informed Plaintiffs of such during a deposition in November.

Subsequently, on December 23, 2011, the parties submitted a joint letter regarding several discovery disputes, including one related to the bug. *See* Docket No. 96 (joint letter). More specifically, in the letter, Plaintiffs asked that E*Trade be sanctioned for failing to disclose the bug until November 2011. The discovery disputes were referred to Judge Spero who ultimately denied the request for relief related to the bug. Judge Spero determined that sanctions were not appropriate because there was no indication that E*Trade had failed to be forthcoming. There was "no evidence that [E*Trade had not told Plaintiffs] exactly what [it] thought the state of affairs were based on a reasonable investigation." Tr. at 23.

Although Judge Spero denied the request for sanctions, he was willing to entertain "whether or not there is something that is capable of being produced to [Plaintiffs] now which might assist [them] in [the] investigation of this [issue related to the bug] which [E*Trade] should be required to

produce."[1] Tr. at 23. It was in this context that Plaintiffs indicated to Judge Spero that source code on search results for fee schedules might be relevant.[2] *See* Tr. at 36. Ultimately, Judge Spero denied the request for code because Plaintiffs could have asked, but did not ask, for the code earlier in the litigation, certainly well before class discovery was about to close. *See* Tr. at 36-37 (noting, *inter alia*, that "we've got about two minutes left in discovery here before the [nonmerits] briefs are due"). Judge Spero, however, denied the request without prejudice, indicating that the code – although not discoverable as a part of class discovery – might be discoverable as a part of merits discovery (*i.e.*, after class certification). *See* Tr. at 37; *see also* Docket No. 118 (Order at 1).

## II. DISCUSSION

Under Rule 72(a), a district judge "may modify or set aside any part of [a magistrate judge's order] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Here, Plaintiffs do not argue any legal error by Judge Spero; rather, they argue factual error alone. The claimed factual error concerns whether Plaintiffs asked E*Trade for source code prior to the filing of the joint discovery letter. The Court finds no factual error on the part of Judge Spero.

In their motion, Plaintiffs point out that document requests they propounded back in December 2010 included requests for source code (via their definition of "documents"). However, Plaintiffs never informed Judge Spero about these document requests.[3]

Plaintiffs argue that, nevertheless, during the hearing, they did tell Judge Spero that they had asked for code. *See* Mot. at 2 n.1. Contrary to what Plaintiffs suggest, the transcript does not reveal such a clear-cut statement. Plaintiffs stated that they asked for code "because we asked [E*Trade] to identify these search results. We asked [E*Trade] to identify what search results could possibly be

---

[1] In its opposition brief, E*Trade points out that its production of source code was not an issue formally submitted to Judge Spero as a part of the parties' discovery letter. But this ignores the fact that Judge Spero was willing to consider alternative relief to Plaintiffs given the circumstances – *i.e.*, the fact that new facts related to the bug did not come to light until November 2011.

[2] This statement by Plaintiffs refutes E*Trade's suggestion that Plaintiffs placed no significance on the source code.

[3] In its opposition brief, E*Trade argues that, during meet-and-confer discussions, Plaintiffs narrowed the scope of their document requests so as to exclude source code. The Court need not address this specific argument because it is denying Plaintiffs' motion on independent grounds.

inputted into the system that would, for instance, pull up the main street investors schedule." Tr. at 36. But asking for identification of search results does not necessarily implicate the production of code.

Even if the contrary were true – or even if the discovery requests had been brought to Judge Spero's attention – there is a more fundamental problem for Plaintiffs. At bottom, Judge Spero rejected Plaintiffs' request for code because they failed to explain why, in essence, they accepted E*Trade's initial denial that the addendum was accessible, and why they accepted E*Trade's August 2011 modification (*i.e.*, that the addendum was accessible but only as of June 2010), when the experience of their own counsel was that the addendum was in fact accessible in early 2010. Given this experience, Plaintiffs easily could have pushed E*Trade to produce the code *specifically* in order to test E*Trade's claims about the accessibility of the addendum. Similarly, Plaintiffs could easily have rejected E*Trade's suggestion that the best way to test its claims would be to depose its corporate designees.

Finally, in any event, Plaintiffs did not explain to Judge Spero why production of the source code was necessary as a part of class discovery and could not be deferred until merits discovery. Notably, even now, Plaintiffs do not make any argument that they need the code for purposes of the class certification motion. Rather, their only contention is that they need the code in order to defend against E*Trade's motion for summary judgment. That argument was never made to Judge Spero, nor could it have been because E*Trade's summary judgment motion was not filed until several days after the hearing before Judge Spero.

To the extent Plaintiffs now ask the Court to consider, as a new matter, their request for production of code (or for that matter other information related to the bug), the Court declines. Plaintiffs' request is premature for several reasons. First, E*Trade has withdrawn its motion for summary judgment. Second, even if E*Trade ends up filing a new motion for summary judgment, it is not clear that E*Trade will be making the same exact arguments as made in its prior motion. Third, even if E*Trade makes the same or similar arguments as before, and Plaintiffs believe they need discovery related to the bug to defend the motion, Plaintiffs have a means by which to ask for discovery, *i.e.*, Federal Rule of Civil Procedure 56(d).

To the extent Plaintiffs object to Judge Spero's denial of sanctions, the Court overrules that objection as well. Judge Spero did not commit any factual or legal error in concluding that there was no evidence that E*Trade was withholding information from Plaintiffs.

Accordingly, Plaintiffs' motion for relief from Judge Spero's order of January 17, 2012, is hereby denied. The Court grants Plaintiffs' motion to file under seal, located at Docket No. 152. Plaintiffs are directed to electronically file the documents at issue under pursuant to General Order 62.

This order disposes of Docket Nos. 152 and 153.

IT IS SO ORDERED.

Dated: February 13, 2012

_____
EDWARD M. CHEN
United States District Judge