Sean P. Reis (SBN 184044)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123
sreis@edelson.com

Rafey S. Balabanian (*Pro Hac Vice*)
Steven L. Woodrow (*Pro Hac Vice*)
Ari J. Scharg (*Pro Hac Vice*)
Benjamin S. Thomassen (*Pro Hac Vice*)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
swoodrow@edelson.com
ascharg@edelson.com
bthomassen@edelson.com

*Attorney for Plaintiffs*,
Joseph Roling and Alexander Landvater

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH ROLING and ALEXANDER LANDVATER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>E*TRADE SECURITIES LLC, a Delaware limited liability company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 3:10-cv-00488-EMC<br><br>[Honorable Edward M. Chen]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT E*TRADE'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hearing Date:  March 16, 2012<br>Hearing Time: 1:30 PM<br>Courtroom:  5 (17th Floor) |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL POSTURE ................................................ 1

STANDARD OF REVIEW ..................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.  E*TRADE'S INACTIVITY FEE PROGRAM IS NOT A SECURITIES TRANSACTION ................................................................................................. 3

    A.  This Case Primarily Challenges E*Trade's *Charging* of Inactivity Fees Which Do Not Involve Securities Transactions ........................................ 4

    B.  The Liquidation of Customer Accounts Has No Special Relationship to the Inactivity Fee Program "Collection" Process ................................... 7

II.  E*TRADE'S INACTIVITY FEE PROGRAM IS NOT AN ANCILLARY SERVICE TO FEDERAL SECURITIES TRANSACTIONS ........................................ 8

III. EVEN IF THE INACTIVITY FEE PROGRAM IS A SECURITIES TRANSACTION OR ANCILLARY TO SUCH A TRANSACTION, THE GBL MAY STILL APPLY ................................................................................ 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**United States Supreme Court Cases Cited**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 3

*Conley v. Gibson*, 335 U.S. 41 (1957) ......................................................................................... 3

**United States Court of Appeals Cases Cited**

*Cassirer v. Kingdom of Spain*, 580 F.3d 1048 (9th Cir. 2009) ............................................... 2, 3

*James v. City of Dallas, Texas*, 254 F.3d 551 (5th Cir. 2001) .................................................... 5

*Tidwell v. Schweiker*, 677 F.2d 560 (7th Cir. 1982) .................................................................... 5

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ....................................................... 3

**United States District Court Cases Cited**

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ............................................................................... 11

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 781 F. Supp. 2d 926 (N.D. Cal. 2011) .......... 3, 8 n.2

*Westways World Travel, Inc v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003) ............................ 5

**State Court Cases Cited**

*Berger v. E*Trade Grp., Inc.*, No. 600721/99, 2000 WL 360092
    (N.Y. Sup. Ct. Mar. 28, 2000) ................................................................................................ 9

*Gray v. Seaboard Secs., Inc.*, 788 N.Y.S.2d 471 (N.Y. App. Div. 2005) .................................... 9

*Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639 (N.Y. App. Div. 2001) .......................... 10

*Small v. Lorillard Tobacco Co., Inc.*, 698 N.Y.S.2d 615 (N.Y. 1999) ................................. 10, 11

**Statutes and Court Rules Cited**

Fed. R. Civ. P. 8(a)(2) ................................................................................................................... 3

N.Y. Gen. Bus. Law § 349 .................................................................................................. *passim*

# INTRODUCTION

This putative class action challenges E*TRADE's practice of charging its customers quarterly "inactivity fees" without legal authority to do so. On January 24, 2012, over E*TRADE's objection, this Court granted Plaintiffs leave to file a Second Amended Complaint ("SAC") to, *inter alia*, add a claim challenging E*TRADE's inactivity program under New York's General Business Law § 349 (the "GBL"). E*TRADE moves to dismiss, asserting that the GBL doesn't apply to "securities transactions" like those purportedly set forth in the Plaintiffs' SAC. As explained below, E*TRADE is mistaken.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

*Plaintiffs' Original and Amended Complaint*

On February 3, 2010, Plaintiff Joseph Roling filed his original class action Complaint against Defendants E*TRADE and DOES 1-50 (collectively referred to as "E*TRADE" or "Defendant"), alleging that E*TRADE unlawfully charged and collected account inactivity fees from thousands of class members. (Dkt. 1.) The Complaint generally alleged that, its conduct notwithstanding, E*TRADE lacked the contractual right to charge its customers such fees. (*See, e.g.*, Dkt. 1 at ¶¶ 3–8.) Those allegations stemmed from, first, E*TRADE's Brokerage Customer Agreement ("BCA") (the document purportedly governing E*TRADE's relationship with its customers, which does not, itself, give E*Trade a right to charge inactivity fees) and, second, the fee schedules purportedly available on the E*TRADE website (which stated that, *inter alia*, E*TRADE would not charge such fees). (Dkt. 1 at ¶¶ 3–4.) On April 28, 2010, and before receiving E*TRADE's answer to the Complaint or any discovery responses, Plaintiff Roling filed an Amended Complaint as a matter of right, adding Alexander Landvater as an additional representative plaintiff, along with factual allegations regarding Mr. Landvater's individual experiences. (Dkt. 14.)

Consistent with the claims and allegations in the original Complaint, Plaintiffs Roling and Landvater sought to represent themselves and a class of similarly situated individuals consisting of "[a]ll persons in the United States who had an E*Trade Securities brokerage account that E*Trade

charged at least one $40 quarterly inactivity fee for any fiscal quarter during which the customer did not make at least one trade." (Dkts. 1, 14.) As before, the class definition was constructed from the information then available to Plaintiffs and investigation conducted by their attorneys, without having received E*TRADE's answer or any discovery in the matter. (Dkts. 1, 14.)

*Plaintiffs' Proposed Second Amended Complaint*

With the benefit of discovery, on November 23, 2011, Plaintiffs moved for leave to file a Second Amended Complaint so as to add (i) a new plaintiff, (ii) a claim under New York's GBL § 349, and (iii) allegations relating to the "bug" on E*TRADE's website. (Dkt. 90.) E*TRADE opposed the motion to amend on several grounds, one of which was that amending "to add a claim under GBL § 349 [would be] futile" because the GBL does not regulate services related to securities transactions, which E*TRADE's contends are at issue in this case. (Dkt. 97 at 15–16.) Following full briefing by the Parties and oral argument of counsel, this Court disagreed with E*TRADE's futility arguments and granted in part and denied in part Plaintiffs' motion to file a Second Amended Complaint. (Dkt. 144.) Specifically, the Court denied Plaintiffs leave to add an additional named plaintiff, but granted the motion in all other respects, including allowing the addition of Plaintiffs' GBL § 349 claim and allegations relating to the "bug."

In allowing the GBL § 349 claim, the Court found that:

> Given [the] split of authority, the Court cannot say that a § 349 claim would be futile so as to prohibit an amendment. Furthermore, even if the Court were to follow *Gray* (*i.e.*, E*Trade's position), it still may be argued that a § 349 claim is not impossible in the case at hand because (1) what is being challenged here is not an actual securities transaction and (2) the services being contested are not ancillary to the purchase or sale of securities – in fact, the conduct being contested is the assessment and collection of fees based on inactivity by the customer.

(Dkt. 144 at 7:27–28; 8:1–4.) In accordance with the Court's Order, on January 27, 2012, Plaintiffs filed their SAC, adding the § 349 claim and the other allegations allowed by the Court. (Dkt. 155.) On February 10, 2012, E*TRADE moved to dismiss the § 349 claim. (Dkt. 170.)

**STANDARD OF REVIEW**

In reviewing a motion to dismiss, the court "accept[s] all well-pleaded factual allegations in the complaint as true, and determines whether the factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 (9th Cir. 2009) (internal citations omitted). Rule 8(a)(2) requires only that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Twombly*, 550 U.S. at 555). And, while federal pleading standards require more than "formulaic recitation of elements" or "naked assertions," a complaint survives dismissal where it states a plausible claim for relief, or where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940, 1949; *Twombly*, 550 U.S. 544. The Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 781 F. Supp. 2d 926, 931 (N.D. Cal. 2011) (citing *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987)).

**ARGUMENT**

**I.    E*TRADE'S INACTIVITY FEE PROGRAM IS NOT A SECURITIES TRANSACTION**

E*TRADE seeks dismissal of Plaintiffs' GBL § 349 claim, arguing that the challenged conduct—*i.e.*, its own inactivity fee program—is beyond the scope of the Statute because it either directly concerns or is ancillary to federal securities transactions. E*TRADE, attempting to avoid the Court's prior ruling granting Plaintiffs' leave to amend their complaint to add the GBL § 349 claim, attempts to recast Plaintiffs' claims as being about the collection of inactivity fees, which are "implemented through securities transactions (*i.e.*, liquidation of their accounts)." (Def. Mot. at 3:28.) E*TRADE's arguments do not withstand scrutiny.

As alleged throughout the SAC, this litigation challenges E*TRADE's "inactivity fee" program. In a broader sense, the program is sub-dividable into two component parts: (1) the quarterly *charging/assessment* of inactivity fees against E*TRADE customer accounts, and (2) E*TRADE's larger fee *collection* process, which includes the collection of the inactivity fees

1  challenged here. Although E*TRADE attempts to describe the inactivity fee program itself—or at
2  least Plaintiffs' challenge to the program—as "the result of securities transactions" (Dkt. 170 at 3),
3  that approach ignores material allegations in the SAC that challenge E*TRADE's *charging* of
4  inactivity fees—which is the conduct at the heart of this dispute. Ultimately, and as this Court
5  recognized when granting Plaintiffs leave to amend to add their GBL § 349 claim, "what is being
6  challenged here is not an actual securities transaction and . . . the services being contested are not
7  ancillary to the purchase or sale of securities – in fact, the conduct being contested is the
8  assessment and collection of fees based on inactivity by the customer." (Dkt. 144 at 8.) Hence, the
9  entire debate as to whether the GBL does or does not govern securities transactions is simply
10 irrelevant with respect to whether Plaintiffs sufficiently pleaded a claim under the GBL. The
11 challenged conduct is not outside the scope of GBL § 349 because, in the end, the charging of
12 inactivity fees has literally nothing to do with securities transactions.

   **A. This Case Primarily Challenges E*TRADE's *Charging* of Inactivity Fees, Which Do Not Involve Securities Transactions.**

15   All of E*TRADE's arguments ignore the main challenge of the SAC, which looks to
16 E*TRADE's practice of *charging* quarterly inactivity fees. In its Motion, and by conflating the
17 issues in dispute, E*TRADE frames the entirety of Plaintiffs' claims in terms of account
18 liquidation, claiming that, for example, "Plaintiffs allege that E*TRADE charge ***and collected***
19 [inactivity fees] from both of them each calendar quarter," and that "Plaintiffs allege that their
20 purported injury occurred as the result of securities transactions." (Dkt. 170 at 2:25–26, 3:5.)
21 E*TRADE thus attempts to conflate and collapse the terms "charge," "collection," and
22 "liquidation," such that whenever the SAC refers to the "charging and collecting" of inactivity
23 fees—or, presumably, only the "charging" of inactivity fees—what Plaintiffs *really* mean
24 (according to E*TRADE) is the "charging and liquidation of customer accounts."

25   E*TRADE is wrong. This case challenges E*TRADE's *charging* of inactivity fees—and
26 not E*TRADE's election to liquidate securities brokerage accounts to (in certain instances) collect
27 those, and other, fees. Plaintiffs' challenge is not nuanced, obscured, or difficult to pinpoint.

28

Indeed, the Court need look no further than the first paragraph of the SAC, where Plaintiffs' allege that "E*TRADE [wrongfully] . . . *charged* its customers inactivity fees . . . for each quarter in which the customers did not make a trade or perform some alternative act required to avoid the fee." (Dkt. 155 at ¶ 1:6–10.) Likewise, and far from asking whether putative class members' brokerage accounts were "liquidated," the Class and Subclass definitions all look to whether, and/or when, putative class members were *charged* at least one inactivity fee. (Dkt. 155 at ¶¶ 2, 41.) Indeed, Roling and Landvater—either individually or collectively—seek to represent a Class and four Subclasses premised on the unlawful *charging* of "inactivity fees":

> **The Class**: All persons in the United States who were . . . *charged* at least one quarterly inactivity fee . . .
>
> **The Increased Fee Subclass**: All Class members who opened an E*Trade securities brokerage account before February 11, 2005, and were *charged* at least one inactivity fee . . .
>
> **The Conflicting Fee Schedule Subclass**: All Class members who were *charged* at least one inactivity fee in or after March 16, 2006.
>
> **The California Agreement Subclass**: All Class members who opened an E*Trade securities brokerage account before November 1, 2005.
>
> **The New York Agreement Subclass**: All Class members who opened or maintained an E*Trade securities brokerage account on or after November 1, 2005.

(Dkt. 155 at ¶¶ 41(a)–(d):1-10)) (italics added). Thus, the class definitions show that there simply is no requirement that *any* putative class member—including any member of the New York Agreement Subclass—must have had his or her brokerage account "liquidated," or even have a single fee "collected" by E*TRADE. *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 232 (C.D. Cal. 2003) ("Threat of collection based on unpaid debt has been held sufficient to satisfy the injury-in-fact requirement [of Article III standing]") (citing *James v. City of Dallas, Texas*, 254 F.3d 551, 564 (5th Cir. 2001); *Tidwell v. Schweiker*, 677 F.2d 560, 565 (7th Cir. 1982)). The charging of inactivity fees is the act that defines whether an individual falls into one or more of the Classes.

To be sure, each of the claims asserted in the SAC, including the GBL § 349 claim, seek

redress for the *charging* of inactivity fees. In Counts I through V for breach of contract and unjust enrichment, Plaintiffs allege they "suffered damages equal to the inactivity fees wrongfully *charged* to them . . ." and seek "restitution . . . of all monies wrongfully retained relating to E*Trade's *imposition* of quarterly inactivity fees . . . ." ((Dkt. 155 at ¶¶ 63, 84, 93, 106; at 16, "Wherefore" clause.) Likewise, in Counts VI and VII, for violations of California's Unfair Competition Law (the "UCL"), Plaintiffs "pray for . . . a declaration that E*Trade's *assessment* of . . . quarterly inactivity fees constitutes unfair business practices in violation of the UCL" and "an order enjoining E*Trade from *charging* and collecting such fees without a contractual basis." (*Id*. at 23:10–13; 24:19–22.)

        The GBL claim (Count VIII) is no exception. Plaintiffs allege that "E*Trade had no contractual authority to *charge* inactivity fees" and that "the practice of *charging* quarterly inactivity fees where no contractual provision in the BCA permitted E*Trade to so *charge* or collect such monies was likely to deceive and/or mislead a customer acting reasonably under the circumstances." (*Id*. ¶¶ 126–27.) Further, and like the preceding claims brought under the UCL, the GBL claim seeks, among other relief, "a declaration that E*Trade's *assessment* of quarterly inactivity fees constitutes a deceptive business practice in violation of the New York Consumer Protection Law" and "an order enjoining E*Trade from *charging* and collecting such fees without a contractual basis." (*Id.* at 26:3–9) (emphasis added). In any event, several of the paragraphs in Count VIII relate solely to the "charging" of inactivity fees and, of course, incorporate the preceding paragraphs (discussed above) of the SAC. (*Id.* ¶ 122.)

        Ultimately, this case challenges E*TRADE's practice of *charging* inactivity fees without contractual authority to do so. While the collection of inactivity fees, through liquidation or otherwise, may round out the elements of Plaintiffs' claims, it does not swallow the claims themselves. Further, and according to the plain allegations of the SAC, there is no doubt that the quarterly process of charging inactivity fees—which, generally speaking, only occurred when a customer "fail[ed] to make a given number of trades, use their E*TRADE account for bill payments, or take other action" (Dkt. 155 at ¶ 1)—has nothing to do purchasing securities.

1  Accordingly, E*TRADE's practice of charging such fees is not exempt from the GBL § 349.

   **B.   The Liquidation of Customer Accounts Has No Special Relationship to the Inactivity Fee Program "Collection" Process.**

Unlike the quarterly assessment of inactivity fees, E*TRADE's general fee collection process—which, in some instances, includes the liquidation of customer accounts—is not exclusive to the inactivity fee program. Through its Motion, E*TRADE attempts to tie the charging of inactivity fees to the liquidation of brokerage accounts, which E*TRADE contends is akin to a securities transaction. Despite what E*TRADE says, the account liquidation process has nothing specifically to do with E*TRADE's quarterly assessment of inactivity fees and is merely one way E*TRADE collects on what it perceives as debts owed by its customers. Customer account liquidation has no specific connection to the *charging* of inactivity fees and, E*TRADE's misrepresentations notwithstanding, did not occur each time an inactivity fee was assessed.[1]

As reflected in the Brokerage Customer Agreement (the "BCA," attached as Exhibit A to the SAC), E*TRADE's collection and liquidation processes generally concern the collection of *fees* of any kind (including commissions, taxes, and other charges):

- Paragraph 4(b): "I authorize E*TRADE Securities automatically to debit my Account for *any such* brokerage commissions, charges, fees and taxes," (Dkt. 155-1 at 6 (emphasis added));

- Paragraph 4(p): "I understand that E*TRADE Securities, to the extent permitted by law, may anytime and without giving me prior notice, use, liquidate, and/or transfer any or all Securities and/or Other Property to satisfy *any* indebtedness or obligation to E*TRADE Securities, however such obligation may have arisen," (Dkt. 155-1 at 14 (emphasis added)).

Thus, liquidation occurs if, and only if, a debt is owed to E*TRADE (again, from whatever source, including debts arising from "brokerage commissions, charges, fees and taxes") and the cash balance of the customer's account is insufficient to cover that debt. This is true regardless of the source of the debt, and is certainly not unique to debts that arise from non-payment of inactivity fees. (*See* Dkt. 155-1 at 6 (¶ 4(b)), 14 (¶ 4(p)).)

---

[1] E*TRADE suggests, for instance, that Plaintiffs allege a tandem charge-and-collect process occurred "each calendar quarter." (Dkt. 170 at 2:25−27.) But such allegations appear nowhere in the SAC, where Plaintiffs allege only a quarterly *charging/assessment* process relating to the challenged inactivity fee program. (*See, e.g.*, Dkt. 155 at ¶¶ 25, 34.)

1    Further, while the SAC admittedly does not spell out the rote details of how E*TRADE
normally "collected" an inactivity (or any other) fee from a brokerage customer, the collection
process often does not implicate account liquidation. As explained, E*TRADE would
"automatically . . . debit" customer accounts each quarter as inactivity fees were assessed. (Dkt.
155-1 at 6 (¶4(b)).) Where a customer carried a positive cash balance in his or her account,
E*TRADE would simply deduct the fees it claimed it was owed as those fees were debited.[2] This
commonplace "collection" process—analogous to how banks and other financial institutions
"collect" fees from customers by deducting those fees from a customer's cash balance—belies
E*TRADE's claim that the charging of inactivity fees is somehow inherently tied to account
liquidation. Properly understood, account liquidation is one method used by E*TRADE (and,
importantly, not the consumer) to increase the cash balance of a brokerage customer's account—
after which it "collects" fees.

   Ultimately, the forced liquidation process is simply not a part of the inactivity fee
program, which involves the charging of inactivity fees on a quarterly basis based on certain
criteria relating to customer accounts. (Dkt. 155 at ¶ 1.) Accordingly, as the charging of inactivity
fees and the collection process have little to do with account liquidation—one of several ways in
which E*TRADE's collects on debts of any kind—Plaintiffs' GBL claim cannot be said to relate
to securities transactions.

**II.    E*TRADE'S INACTIVITY FEE PROGRAM IS NOT AN ANCILLARY SERVICE TO FEDERAL SECURITIES TRANSACTIONS.**

   The challenged inactivity fee program is not "ancillary to the purchase of securities," and
is therefore not excluded from the GBL's scope. (Def. Mot. at 9:4–16.) E*TRADE's own
authorities show that specific conduct or services are "ancillary" to a security transaction, and
potentially exempt from the GBL § 349, only when such conduct or services facilitates or

---

[2]   As an examination into the merits would show that E*TRADE instituted such a direct collection from the cash balance of Landvater's account after charging the first inactivity fee against his account on or around June 30, 2007. The basic use of the terms "charge and collect" encompasses such routine circumstances, are represent a simple inference that can be drawn from the plain allegations of the SAC. *Northstar Fin. Advisors*, 781 F. Supp. 2d at 931 (reasonable inferences must be drawn in nonmovant's favor).

otherwise plays a supporting role in the purchase of securities. Far from being "ancillary to the purchase of securities, E*TRADE's inactivity fee program charged customers when they did *not* purchase securities. (Dkt. 155 at ¶ 1.) Accordingly, E*TRADE arguments in favor of dismissal fail.

All of the cases and circumstances cited by E*TRADE follow this commonsense understanding of services "ancillary to the purchase of securities." In *Berger v. E*Trade Grp. Inc.*, No. 600721/99, 2000 WL 360092 (N.Y. Sup. Ct. Mar. 28, 2000), for instance, E*TRADE explains that "the plaintiff complained that service interruptions on E*TRADE's website interfered with his ability to conduct transactions." (Dkt. 170 at 9.) As such, and because the plaintiff normally relied on that service to *conduct security transactions*, the court plainly reasoned that the plaintiff's claims were "inextricably intertwined with his securities account and the securities transactions that he was allegedly unable to complete within that account." *Berger*, 2000 WL 360092, at *5. Properly understood, then, the case was not about "the absence of transactions [instead of] specific transactions," as E*TRADE attempts to analogize, (Dkt 170 at 9), but rather, about claims relating to services that normally facilitated the plaintiff's purchase of securities. Similarly, in *Gray v. Seaboard Secs., Inc.*, the plaintiff sued after the defendants failed to provide certain "promised investment advice" that was supposed to "assist [plaintiff] in the purchase of securities." 788 N.Y.S.2d 471, 472 (N.Y. App. Div. 2005). Because that promised advice clearly would have been used to facilitate securities transactions, the court had no problem concluding it was "clearly 'ancillary to the purchase of securities'" and accordingly outside the scope of the GBL § 349. *Id*. at 473.

Plaintiffs did not use or otherwise rely on E*TRADE's inactivity fee program to facilitate the purchase of securities. In fact, and as alleged in the SAC, neither Roling nor Landvater even *knew* they were being charged inactivity fees until several such charges had accrued on their E*TRADE accounts. (Dkt. 155 at ¶¶ 25–26, 34–35.) Neither Plaintiff even knew about the fee when they signed up as E*TRADE customers. (Dkt. 155 at ¶¶ 23–25, 33–34.) Clearly, nothing in the pleadings suggest that either Plaintiff ever considered the inactivity fee as a part of their

decision-making process concerning "whether to make a trade or not" in any given quarter.[3] (Dkt 170 at 9:16–23.) Further, how E*TRADE elects to utilize the revenue generated from the inactivity fee program is far outside the pleadings memorialized in the SAC, and simply has no relevance to Defendant's Motion to Dismiss. (*See* Dkt. 170 at 9:23–27.)

In this case, the challenged inactivity fees have *no* connection to the buying and selling of securities *by definition*—Plaintiffs' are seeking to recover inactivity fees wrongfully charged to them when they failed to engage in the buying and selling of securities in a given quarter. (*See* Dkt. 155 at ¶¶ 1–2.) Neither Plaintiff seeks to recover the securities unilaterally liquidated by E*TRADE, nor did they rely on the quarterly timing of the fee when deciding whether to buy or sell securities. Rather, Plaintiffs have pled that they never agreed to any inactivity fee—accordingly, when E*TRADE charged inactivity fees, it breached the terms of the BCA, was unjustly enriched, and violated the UCL and GBL in the process.

### III. EVEN IF THE INACTIVITY FEE PROGRAM IS A SECURITIES TRANSACTION OR ANCILLARY TO SUCH A TRANSACTION, THE GBL MAY STILL APPLY.

As this Court previously acknowledged, "many (if not most) New York courts—both federal and state—have held that § 349 does not apply to securities transactions." (Dkt. 144 at 6.) However, the breadth of that exception, if any exists, is not settled.

As already noted by both this Court and E*TRADE, at least one New York appellate court has held that § 349 covers securities transactions. In *Scalp & Blade, Inc. v. Advest, Inc.*, the court held that there was "no basis for invoking any blanket exception under the [GBL] for securities transactions or for limiting the statute's applicability to the sale of 'goods.'" 722 N.Y.S.2d 639, 641 (N.Y. App. Div. 2001). Far from "[l]acking any logic, analysis or supporting precedent," (Dkt. 170 at 8:12), the *Scalp & Blade* court based its conclusion on, first, the statute's plain language, which prohibits "deceptive acts or practices . . . in the furnishing of any service,"

---

[3] Even if E*TRADE's strained circumstances did hypothetically affect a customer at some point in time (*i.e.*, a customer was "on the fence" about whether to make a trade in a given quarter, and the inactivity fee had some ultimate effect on his or her decision), (*see* Dkt. 170 at 9), such hypothetical circumstances are wholly alien to the pleadings and should have no bearing on this Motion to Dismiss.

General Business Law § 349(a), and, second, the New York "Court of Appeals' characterization of the statute as 'appl[ying] to virtually all economic activity,'" *Small v. Lorillard Tobacco Co.*, 698 N.Y.S.2d 615, 620 (N.Y. 1999). While E*TRADE may not agree with the *Scalp & Blade* court's holding, the case is based upon the GBL itself and the New York Court of Appeals' characterization of the statute, and comports with the opinions of courts in this District, which have held that "[a plaintiff] need only allege consumer-oriented conduct that implicates the public interest in New York." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1143 (N.D. Cal. 2008). This Court should follow *Scalp & Blade*, and hold the GBL covers securities transactions.

E*TRADE's Motion should be denied. Far from "reinvent[ing] the wheel" as E*TRADE claims, (Dkt. 170 at 10), this Court should not allow E*TRADE to ignore or otherwise re-write the SAC and conclude that Plaintiffs challenge security transactions, or services ancillary to the purchase of securities. E*TRADE cannot enjoy *carte blanche* immunity from claims under the GBL merely because some aspect of its business involves the purchase and sale of securities. This case is squarely about E*TRADE's quarterly process of *charging* inactivity fees against Plaintiffs and the putative class, and accordingly does not fall under any exception in the GBL for security transactions (if any broad exception does exist).

**CONCLUSION**

Plaintiffs respectfully request that the Court deny E*TRADE's Motion, including its alternative request that this Court certify an interlocutory appeal, in its entirety. E*TRADE's attempt to shield itself permanently from state statutory claims prohibiting deceptive conduct—by including a New York choice of law provision in its BCA and by obtaining favorable, though inapposite, rulings from New York Courts that it can cite to claim the GBL § 349 does not apply to any of its activities—should not be allowed. Put simply, charging inactivity fees does not amount to a securities transaction.

Respectfully submitted,

JOSEPH ROLING and ALEXANDER LANDVATER, on the own behalves and on

|   |   |
|---|---|
|   | behalf of all others similarly situated, |
| Dated: February 24, 2012 | By: /s/ Rafey S. Balabanian |
|   | One of Plaintiffs' Attorneys |

Sean P. Reis (SBN 184044)
E<span>DELSON</span> M<span>C</span>G<span>UIRE</span> LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123
sreis@edelson.com

Rafey S. Balabanian (*Pro Hac Vice*)
Steven L. Woodrow (*Pro Hac Vice*)
Ari J. Scharg (*Pro Hac Vice*)
Benjamin S. Thomassen (*Pro Hac Vice*)
E<span>DELSON</span> M<span>C</span>G<span>UIRE</span> LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
swoodrow@edelson.com
ascharg@edelson.com
bthomassen@edelson.com

*Counsel for Plaintiff*s, Joseph Roling and Alexander Landvater

# **CERTIFICATE OF SERVICE**

I, Sean P. Reis, an attorney, hereby certify that on February 24, 2012, I served the above and foregoing Plaintiffs' Opposition to Defendant E*Trade's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), by causing true and accurate copies of such paper to be filed with the Court and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 24th day of February, 2012.

/s/ Sean P. Reis