f

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ROLING, *et al.*, | No. C-10-00488 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| E*TRADE SECURITIES LLC, | **(Docket No. 170)** |
| Defendant. | |
| _____/ | |

Plaintiffs Joseph Roling and Alexander Landvater have filed a class action against E*Trade Securities, LLC, asserting that it unlawfully charged and collected account inactivity fees from its customers. Currently before the Court is E*Trade's motion to dismiss Plaintiffs' claim for violation of New York General Business Law § 349. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** E*Trade's motion to dismiss.

## I. FACTUAL & PROCEDURAL HISTORY

Previously, the Court gave Plaintiffs leave to file a second amended complaint ("SAC"). *See* Docket No. 144 (order). One of the amendments allowed was the addition of a claim pursuant to New York General Business Law § 349. The Court noted that, at that point in the proceedings, it could not say that a § 349 claim would be futile so as to prohibit an amendment. *See* Docket No. 144 (Order at 6-7).

///

///

Subsequently, Plaintiffs filed their SAC. In their claim for violation of § 349, Plaintiffs allege that "E*Trade's conduct in charging and collecting quarterly inactivity fees from its customers constituted a deceptive and/or misleading practice." SAC ¶ 124.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B. Exemption of Securities Transactions from § 349

Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). E*Trade argues first that Plaintiffs' § 349 claim must be dismissed because § 349 does not apply to securities transactions.

"'[T]he typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.'" *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, No. 08-581S WMS, 2012 WL 432890, at *15 (W.D.N.Y. Feb. 9, 2012) (quoting *Teller v. Bill Hayers, Ltd.*, 630 N.Y.S.2d 769,

2

773 (1995)). Thus, to make out a prima facie case under § 349, a plaintiff must as a threshold matter, "'charge conduct that is consumer oriented.'" *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995)).

Most New York courts – both federal and state – have held that § 349 does not apply to securities transactions. *See M & T Bank Corp.*, 2012 WL 432890, at *14 ("follow[ing] the overwhelming weight of authority among the state's intermediate appellate courts and its fellow district courts in concluding that securities transactions fall outside the scope of [§ 349]"); *Pew v. Cardarelli*, No. 5:05-CV-1317 NAM, 2009 WL 3165759, at *4 (N.D.N.Y. Sept. 29, 2009) (taking into account "the weight of authority in the New York intermediate appellate courts holding that [§ 349] does not apply to securities transactions, and the many district court decisions in this circuit interpreting New York law and reaching the same conclusion"); *Gray v. Seaboard Secs., Inc.*, 788 N.Y.S.2d 471, 472-73 (2005) (stating that "[t]he vast majority of courts which have considered the issue have found [§ 349] inapplicable to securities transactions"); *see also Dweck v. Oppenheimer & Co., Inc.*, 816 N.Y.S.2d 440, 441 (2006) (affirming dismissal of § 349 claim relating to broker's failure to sell bonds to plaintiff); *Smith v. Triad Mfg. Grp.*, 681 N.Y.S.2d 710, 712 (1998) (affirming dismissal because plaintiffs could not bring § 349 claim based on stocks issued by defendant). In *Gray*, the state appellate court extended this holding to services ancillary to the purchase or sale of securities. *See Gray*, 788 N.Y.S.2d at 473 (rejecting the plaintiffs' argument that their claim under § 349 "relates to the service of providing investment advice and not to the purchase of securities themselves[;] [s]imply stated, we view the promised advice as clearly 'ancillary to the purchase of securities'").

> The reasoning underlying these decisions is twofold: As aptly outlined in *Morris v Gilbert* (649 F. Supp. 1491, 1497 [E.D.N.Y. 1986]), individuals do not generally purchase securities in the same manner as traditional consumer products, such as vehicles, appliances or groceries since "securities are purchased as investments, not as goods to be 'consumed' or 'used.'" Moreover, because the securities arena is one which is highly regulated by the federal government, it is questionable that the "legislature intended to give securities investors

3

an added measure of protection beyond that provided by securities acts."[1]

*Gray*, 788 N.Y.S.2d at 473.

In their papers, Plaintiffs protest that there are courts that have reached the opposite conclusion. Most notably, in *Scalp & Blade Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639 (2001), the state appellate court concluded:

> Given the statute's explicit prohibition of "[d]eceptive acts or practices . . . in the furnishing of any service," and given the Court of Appeals' characterization of the statute as "app[lying] to virtually all economic activity," we see no basis for invoking any blanket exception under the statute for securities transactions or for limiting the statute's applicability to the sale of goods."

*Id.* at 640-41.

However, as E*Trade correctly notes, the *Scalp* court provided no further analysis, and most courts have found *Scalp* to be of limited reach and unpersuasive. *See, e.g.*, *Gray*, 788 N.Y.S.2d at 473 (holding that the weight of authority shows that § 349 does not extend to securities transactions after acknowledging the existence of *Scalp*); *see also Pew*, 2009 WL 3165759, at *5 (stating that "[t]he precedential meaning of the few contrary decisions in the Second and Fourth Departments is unclear, and they do not provide a significant counterweight to the First and Third Department cases").

---

[1] Section 349(d) is, in essence, a codification of the latter principle. It provides:

> [I]n any action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission, or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

N.Y. Gen. Bus. Law § 349(d). In *Yeger v. E*Trade Securities, LLC*, No. 602589/04, Slip Op. at 3-4 (N.Y. Sup. Ct. Jan. 31, 2006), one of the main cases cited by E*Trade, the court relied on § 349(d) in holding that the alleged unlawful conduct of E*Trade – *i.e.*, the imposition and collection of account maintenance fees – did not fall within the scope of § 349 because it was governed by federal agency rules.

Given the overwhelming number of New York decisions holding that § 349 does not apply to securities transactions, this Court declines to follow *Scalp*. The United States Supreme Court has advised that, even where the highest state court (here, the New York Court of Appeals) has not opined on the issue, federal courts still should not substitute their judgment for the law of a state when lower-tier state courts have made that law clear:

> There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every care to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

*West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940).

Accordingly, this Courts holds that securities transactions are exempt from § 349 and now turns to the issue of whether E*Trade's charging and collecting of inactivity fees either constitute a securities transaction or a service ancillary to such a transaction such that it falls within the scope of § 349.

C.  <u>Securities Transaction or Service Ancillary to Securities Transaction</u>

According to E*Trade, Plaintiffs' § 349 claim is not viable because E*Trade's alleged unlawful activity constitutes a securities transaction. E*Trade points out that the means by which it collected the AMFs was to liquidate – *i.e.*, sell – stock, and there should be no dispute that the sale of stock is a securities transaction. In response, Plaintiffs contend that E*Trade improperly focuses on the collection of the AMFs. According to Plaintiffs, the true unlawful conduct that is being challenged is the charging of the AMFs; how E*Trade ultimately collected is largely immaterial or at least secondary.

The problem for Plaintiffs is that, even if the only conduct at issue is the mere charging of the AMFs (and not the collection via liquidation as alleged in the complaint), that conduct is still ancillary to a securities transaction such that § 349 does not apply. As noted above, the state

appellate court in *Gray* expressly held that ancillary services are not covered by § 349. *See Gray*, 78 N.Y.S.2d at 473; *see also Berger v. E*Trade Grp., Inc.*, No. 600721/99, 2000 WL 360092, at *4 (N.Y. Sup. Ct. Mar. 28, 2000) (stating that "securities instruments, brokerage accounts and services ancillary to the purchase of securities have been held to be outside the scope of [§ 349]"). Other courts have followed suit. For example, in several cases, courts have dismissed a plaintiff's § 349 claim which was based on the allegation that the defendant had given bad or fraudulent investment advice in conjunction with the plaintiff's purchase of securities. *See Rosenbach v. Diversified Grp., Inc.*, No. 602463/2005 KM, 2006 WL 1310656, at *5 (N.Y. Sup. Ct. May 10, 2006); *Gray*, 788 N.Y.S.2d at 473.

Plaintiffs argue that *Rosenbach* and *Gray* are distinguishable because, in those cases, the plaintiff actually conducted a securities transaction whereas, here, the AMFs were charged precisely because no securities transactions took place. While the Court noted, in its order granting Plaintiffs' motion to amend, that this argument could be made, *see* Docket No. 144 (Order at 8), it now rejects the merits of that argument. Notably, in *Berger*, the court rejected the applicability of § 349 even when no securities transactions took place. *See Berger*, 2000 WL 650037, at *5 (dismissing plaintiff's claim over defective technology because such service was "inextricably intertwined" with securities purchases that plaintiff was allegedly unable to complete).

Here, the charging of the AMFs is appropriately considered an ancillary service, particularly because – as E*Trade argues – the AMFs cannot be viewed in isolation but rather must be considered as a part and parcel of E*Trade's services as a brokerage firm, *i.e.*, a company that assists its customers in the buying and selling of stock. The AMFs are charged in order to maintain the customers' brokerage accounts and to provide brokerage services to customers to enable them to purchase and sell securities. In other words, the AMF is like a fee necessary to maintain an account in order to have the ability to buy and sell securities. The AMFs are also charged as an incentive for customers to buy or sell stock rather than remain inactive; they are designed to influence the decision to trade in securities. *Cf. Rosenbach*, 2006 WL 1310656, at *5; *Gray*, 788 N.Y.S.2d at 473. Given these circumstances, for the Court to characterizes the charging of AMFs as something other

than an ancillary service would be elevating form over substance. AMFs are "inextricably intertwined" with securities transactions. *Berger*, 2000 WL 650037, at *5.

The Court also notes that its conclusion is supported squarely by *Yeger*. There, the court was also faced with a plaintiff's challenge to E*Trade's imposition of the AMF. Implicitly, in holding § 349 inapplicable, the court assumed that the charging of the fee was a service ancillary to a securities transaction. *See Yeger*, No. 602589/04, Slip. Op. at 1-4 (dismissing plaintiff's § 349 claim over defendant's failure to disclose and describe the AMFs schedule because § 349 does not extend to securities transactions; implying that the AMFs were ancillary to securities purchases and therefore also exempt from § 349).

Accordingly, the Court agrees with E*Trade that § 349 does not apply to the alleged unlawful conduct at issue and therefore dismisses the claim with prejudice.

### III. CONCLUSION

For the reasons stated above, the Court grants E*Trade's motion to dismiss the § 349 claim. The dismissal is with prejudice.

This order disposes of Docket No. 170.

IT IS SO ORDERED.

Date: March 27, 2012

_____
EDWARD M. CHEN
United States District Judge